## THE TOMPKINS.

(Circuit Court of Appeals, Second Circuit. July 12, 1926.)

No. 400.

1. Attorney and client ⬅️104.

Purchaser of vessel, whose attorney had knowledge of satisfaction of mortgage which disclosed unrecorded title in one other than seller, *held* not without notice of such title, within meaning of Act Feb. 16, 1925, § 2 (Comp. St. Supp. 1925, § 8146¼kk[1]).

2. Notice ⬅️2, 5.

"Constructive notice" is legal inference from established facts, while "actual notice" may be either actual knowledge or notice implied from facts.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Actual Notice; Constructive Notice.]

Appeal from the District Court of the United States for the Southern District of New York.

Libel by the New York Canal & Great Lakes Corporation, filed as petitory and possessory suit to establish the right, title and possession of the steam barge Tompkins, her engines, etc., Frank Lowery, claimant, and another. Decree for respondents, and libelant appeals. Reversed.

Rumsey & Morgan, of New York City (Mark W. Maclay and John Tilney Carpenter, both of New York City, of counsel), for appellant.

Macklin, Brown, Lenahan & Speer (Pierre M. Brown, of New York City, of counsel), for respondent Lowery.

Before MANTON, HAND, and MACK, Circuit Judges.

MANTON, Circuit Judge. This suit, filed to establish the right, title, and possession of the appellant to the steam barge Tompkins, was brought in rem and in personam, pursuant to rule 19 of the Rules of the Supreme Court in Admiralty. The process was issued, and the vessel arrested, and personal service of process made on the individual respondents. The appellee Lowery appeared, filed his answer, and made claim to the vessel. He later filed exceptions to the libel. Pursuant to admiralty rule 37 of the District Court, the exceptions were heard by the District Judge and sustained. A decree was entered, dismissing the libel, and this appeal seeks to review that determination. The decree adjudged Lowery to be the owner of the Tompkins and entitled to its possession.

The Tompkins is a steel steam twin screw barge of 272 gross tons. The United States of America purchased it from its builders by a bill of sale dated September 4, 1920. It was recorded in the office of the collector of customs at Baltimore on January 24, 1921. On July 12, 1921, the Bureau of the War Department entered into a contract for the sale of a fleet of vessels, one of which was the Tompkins, which is referred to as the Baltimore fleet. Under the terms of this contract, the buyers organized a corporation, which has now assumed the name of the Inland Steamship Company. Bills of sale for the vessels, including the Tompkins, were executed and delivered. At the same time, a preferred mortgage of the face value of $375,000 on these vessels, including the Tompkins, was made to the United States of America. The bill of sale conveying this title was recorded

August 2, 1921, at the custom house in Baltimore. The preferred mortgage was recorded the same day. The terms of the mortgage are of no importance here, except a provision for the release of the Tompkins on the payment of $27,000. The mortgage did provide that no sale or other transfer of the vessel should be made, or the vessel released of the lien of the mortgage, without the written consent of the mortgagee.

On June 6, 1921, the United States sold another fleet of vessels to the appellant, which was referred to as the New York fleet. Both fleets were operated by their respective companies, but defaults occurred in the payment under the terms of the contract of sale. Negotiations resulted in the reduction of the purchase price and a consolidation of the two fleets. This was by virtue of the authorization of Congress by Public Resolution of the 68th Congress, March 3, 1925 (43 Stat. 1255). The War Department, by virtue of this authority, revised the contract, so that the appellant might own and operate the consolidated fleet, and agreed to accept therefor $500,000, crediting such payments as had been made, and leaving a balance of $326,240.47 to be liquidated by the appellant. To effectuate this arrangement, an agreement was made, dated September 1, 1925, between the United States, as the seller, and Edward S. Hughes, E. C. Warfield, and George Kern, described as the buyers, and the appellant and the Inland Steamship Company, described as the assignees. Though that contract was dated September 1, 1925, it was not finally approved by the War Department until November 6, 1925. It was under this contract that the appellant claims title to the Tompkins. The appellant made the payments required, and under date of December 14, 1925, the War Department executed a release and discharge of the preferred mortgage on the Tompkins. This release referred to the mortgage and its recordation at the custom house in Baltimore, and further—

"Whereas, the Baltimore, Philadelphia & Southern Transportation Corporation, by amendment of its certificate of incorporation, duly changed its corporate name to Inland Steamship Corporation and all its rights in the subject-matter have been duly assigned to New York Canal & Great Lakes Corporation, a corporation duly organized and existing under the laws of the state of Delaware, with an office at 15 Moore street, borough of Manhattan, city of New York."

It further recited the public resolution of Congress, the contracts concerning the two

fleets, and that, by an agreement dated September 1, 1925, the modification of all prior contracts, the United States agreed to discharge from said mortgage the above-named vessel if certain payments were made. The mortgage was satisfied, released, and discharged.

The appellee Lowery entered into negotiations for the purchase of the vessel on December 15, 1925, dealing with E. G. Warfield, representing the Inland Steamship Company. It was represented to him that the Inland Company was the owner of the vessel. He inspected the vessel the following March and agreed to purchase it for $18,500. He employed an attorney to examine the title and obtained an abstract thereof. The attorney obtained an abstract of title from the collector's office at Baltimore, and on March 29th he called upon Warfield, who had in his possession a satisfaction of the mortgage on the vessel, which appeared as an incumbrance in the abstract of title. On April 2, 1926, a bill of sale was executed and delivered by Warfield to Lowery, together with a satisfaction of mortgage. The attorney looked at the satisfaction of the mortgage, accepted the same with the bill of sale, and handed Lowery's check for the agreed purchase price to Warfield.

Before April 4th the appellee Lowery put the papers in the hands of a custom house broker for recordation, but they were sent to the custom house at Albany, with an application for a change of the home port. The papers were returned, with instructions to file them in Baltimore. The release of mortgage was recorded April 19, 1926, at 9 a. m. It appears by one of the regulations of the custom house that, when an abstract of title is sent out for the purpose of changing the home port, the papers will not be recorded until the abstract is returned for cancellation. There was a delay in obtaining the signature of the president of the Inland Steamship Company to the appellant's conveyance of the Tompkins, but it was sent for record to the office of the collector of customs at Baltimore, and received there on April 19, 1926. Application to continue Baltimore as the vessel's home port was made and approved by the Commissioner of Navigation. The collector then issued an abstract of title showing ownership in the appellant.

[1] The court below stated the question to be whether the appellee Lowery was a purchaser without actual notice of the ownership in any person or corporation other than the grantor in the bill of sale to him. He thereupon an-

swered the question in favor of the appellee and dismissed the libel. He held that, since the conveyance to the appellant had not been recorded at the time of Lowery's purchase, Lowery's claim of title and possession was superior to that of the appellant. Our attention is directed to the recording statute of February 16, 1925, section 2 of which (Comp. St. Supp. 1925, § 8146¼kk[1]) provides:

"Sec. 2. [*Recordation of bills of sale, mortgages, etc., at home port.*] No bill of sale, conveyance, mortgage, assignment of mortgage, or hypothecation (except bottomry), which includes a vessel of the United States or any portion thereof shall be valid in respect to such vessel against any person other than the grantor or mortgagor, his heirs or devisees, and any person having actual notice thereof, until such bill of sale, conveyance, mortgage, assignment of mortgage, or hypothecation is recorded in the office of the collector of customs at the home port of such vessel. Any bill of sale or conveyance of the whole or any part of a vessel shall be recorded at the home port of such vessel as shown in her new document."

Under this provision of law, the appellant's bill of sale is good as against Lowery, unless it can be established that he was without actual notice of the conveyance to the appellant. It is affirmatively shown that his attorney had actual knowledge, through the recital in the satisfaction of the mortgage referred to, of the title of the appellant. Notice to the attorney was notice to the client. Reeves v. Vinacke, 20 Fed. Cas. 474, No. 11,-663; Roll v. Rea, 50 N. J. Law, 264, 12 A. 905; Mulholland's Estate, 224 Pa. 536, 73 A. 932, 132 Am. St. Rep. 791; Green v. Early, 39 Md. 223; Griffith v. Griffith, 9 Paige (N. Y.) 315. The attorney, called as a witness, admitted having received the release or satisfaction of the mortgage containing the recital referred to. He attempts, however, to be excused from the legal effect of having an opportunity to examine the release by saying that he did not examine it carefully. But actual notice of the document was material to the purchaser's title, and must be deemed to be actual notice of the contents of that document. Stanley v. Schwalby, 162 U. S. 255, 16 S. Ct. 754, 40 L. Ed. 960; Sweet v. Henry, 175 N. Y. 268, 67 N. E. 574. The distinction between knowledge and notice has been re-ferred to in numerous cases, and is considered in Simmons Creek Coal Co. v. Doran, 142 U. S. 417, 12 S. Ct. 239, 35 L. Ed. 1063, where it is said a purchaser "has no right to shut his eyes or his ears to the inlet of information, and then say he is a bona fide purchaser without notice," and further:

"Each case must be governed by its own peculiar circumstances, and in that in hand we think appellant either had actual knowledge, or actual notice of such facts and circumstances as by the exercise of due diligence would have led it to knowledge of complainant's rights, and that, if this were not so, then its ignorance was the result of such gross and culpable negligence that it would be equally bound."

[2] Actual notice differs from constructive notice, in that the latter is a legal inference from established facts, while actual notice may be either actual knowledge or notice implied from the facts. In Fidelity & Deposit Co. v. Queens County Trust Co., 226 N. Y. 225, 123 N. E. 370, it is said:

"If a person has knowledge of such facts as would lead a fair and prudent man, using ordinary thoughtfulness and care, to make further accessible inquiries, and he avoids the inquiry, he is chargeable with the knowledge which by ordinary diligence he would have acquired. Knowledge of facts, which, to the mind of a man of ordinary prudence, beget inquiry, is actual notice, or, in other words, is the knowledge which a reasonable investigation would have revealed."

Investigation of the release or satisfaction of the mortgage by a mere reading of the recitals, which are as important as other stipulations, would have revealed the existence of title in the appellant. Careless or indifferent reading will not excuse. There was the inlet of information to which the attorney closed his eyes and ears by an indifferent reading and the appellee Lowery must be held to have purchased with notice of the existence of title in another and therefore may not be declared a bona fide purchaser without notice of the conveyance to the appellant. The appellant had legal title, which was superior to the claim of the appellee, and for that reason the exceptions must be overruled, and the decree reversed.

Decree reversed, with costs.