Lawrence A. MARSDEN, Plaintiff,

v.

SOUTHERN FLIGHT SERVICE, INC. Aircraft Finance Company and First National Bank of Springfield, Defendants

No. C–152–G–60.

United States District Court
M. D. North Carolina,
Greensboro Division.

Dec. 22, 1961.

See also D.C., 192 F.Supp. 418.

Arch K. Schoch, High Point, N. C., for plaintiff.

Frank B. Wyatt, High Point, N. C., for defendant Southern Flight Service, Inc.

Grier, Parker, Poe & Thompson, Charlotte, N. C., for defendants Aircraft Finance Co. and First National Bank of Springfield.

PREYER, District Judge.

This is an action for a declaratory judgment brought by the plaintiff to determine the rights of the parties in a particular aircraft now in the possession of the plaintiff.

The Court, after considering the pleadings and evidence, including exhibits and stipulations filed, and briefs of the parties, now makes and files herewith its Findings of Fact and Conclusions of Law, separately stated.

### FINDINGS OF FACT

1. On November 16, 1959, defendant Southern Flight Service, Inc. purchased the 1958 Beechcraft Travel Air, Serial No. TD 75, Registration No. N–688T, hereinafter referred to as the subject aircraft, from Hargrove Bowles, Jr.

2. The bill of sale to Southern Flight Service, Inc. was duly filed for recordation with the Federal Aviation Agency by November 25, 1959, and recorded on December 14, 1959.

3. On November 16, 1959, defendant Southern Flight Service, Inc. executed and delivered a note in the principal amount of $30,608.16, payable 90 days from date, to Aircraft Investment Corporation of Fort Worth, Texas, which note was secured by a chattel mortgage on the subject aircraft.

4. Said mortgage to Aircraft Investment Corporation was duly filed for recordation with the Federal Aviation Agency by November 25, 1959, and recorded on December 14, 1959.

5. On November 28, 1959, plaintiff entered in a written agreement with defendant Southern Flight Service, Inc. under the terms of which plaintiff agreed to purchase the subject aircraft from the defendant Southern Flight Service, Inc. for the sum of $20,400 in cash and delivery by plaintiff to the defendant Southern Flight Service, Inc. of a 1958 Beechcraft J–35 Bonanza, the defendant Southern Flight Service, Inc. agreeing to install certain additional equipment in the subject aircraft.

6. Plaintiff did not cause a title examination of the records of the Federal Aviation Agency to be made on the subject aircraft before entering into said agreement.

7. Plaintiff paid $10,000.00 to defendant Southern Flight Service, Inc. on December 10, 1959, toward the purchase price of the subject aircraft and at the same time delivered the J–35 Bonanza aircraft to the defendant Southern Flight

Service, Inc. together with a bill of sale thereto.

8. On January 6, 1960, defendant Southern Flight Service, Inc. executed and delivered a note in the principal amount of $34,513.80, payable in 30 successive monthly installments of $1,150.46 each, to Aircraft Investment Corporation, which note was secured by a chattel mortgage on the subject aircraft.

9. Said mortgage was duly filed for recordation with the Federal Aviation Agency by January 18, 1960, and recorded on February 2, 1960.

10. On January 21, 1961, after the defendant Southern Flight Service, Inc. had installed certain equipment in the subject aircraft pursuant to the aforesaid agreement, the plaintiff paid the remaining $10,400.00 due under said agreement to the defendant Southern Flight Service, Inc. and at that time first took possession of the subject aircraft.

11. At the time plaintiff took possession of the subject aircraft on January 21, 1960, he received a bill of sale thereon from the defendant Southern Flight Service, Inc. and also an application for registration with the Federal Aviation Agency.

12. Plaintiff has had possession of the subject aircraft at all times since January 21, 1960.

13. At the time plaintiff took possession of the subject aircraft on January 21, 1960, he did not have personal knowledge of the two earlier mortgages of the subject aircraft to Aircraft Investment Corporation.

14. Plaintiff did not cause a title examination of the records of the Federal Aviation Agency to be made on the subject aircraft before paying said $10,-400.00 and accepting said bill of sale on January 21, 1960.

15. Plaintiff turned the application for registration of the subject aircraft with the Federal Aviation Agency and the bill of sale over to Richard R. Washburn, President of defendant Southern Flight Service, Inc. on the assurance of Mr. Washburn that they would be forwarded to the Federal Aviation Agency and plaintiff retained the yellow copies of the bill of sale and application for registration in his possession and put them in the subject aircraft at that time.

16. In March 1960, a document entitled "Major Repair and Alteration Form" was filed with the Federal Aviation Agency by T. H. Lackey on which document T. H. Lackey certified that certain alterations and repairs were made to the subject aircraft during that month and on which document the plaintiff's name and address appears in the space designated for the name and address of the owner of the aircraft.

17. In May 1960, a document entitled "Aircraft Use and Inspection Report", FAA Form ACA No. 2850, was filed with the Federal Aviation Agency and on which document T. H. Lackey certified that a periodic inspection of the aircraft had been conducted on May 5, 1960, and that the aircraft was airworthy. On the document the plaintiff's name and address appears in the space designated for the name and address of the owner of the aircraft.

18. These documents were eventually placed in the same file as were the documents relating to title to, and liens on, the subject aircraft but were attached to the other side of the file from, and was kept separate from such title and lien documents, where they were found on March 23, 1961. It is stipulated that all documents in the file "shall be considered as having been received by said Agency on the earliest date stamped or written on such documents by said Agency. In the absence of proof to the contrary, all dates stamped or written on such documents shall be construed as having been placed there by said Agency, unless they appear in the body of the instrument itself." In the light of this stipulation, it is found that the "Major Repair and Alteration Form" was filed on March 24, 1960, and the "Aircraft Use and Inspection Report" on May 19, 1960.

19. In May 1960, Richard R. Washburn, President of defendant Southern

Flight Service, Inc., contacted defendant Aircraft Finance Co. on behalf of his Company for the avowed purpose of obtaining a loan with which to pay off the mortgages on the subject aircraft then outstanding to Aircraft Investment Corporation.

20. At that time Richard R. Washburn advised defendant Aircraft Finance Co. that he was using the subject aircraft in his charter business.

21. On May 16, 1960, defendant Aircraft Finance Co. requested that a title and lien search of the Federal Aviation Agency records on the subject aircraft be made by Aviation Information Service, Inc., a corporation engaged in that business in Oklahoma City, Oklahoma.

22. On the same date, the defendant Aircraft Finance Co. received a telegram from Aviation Information Service, Inc., advising that the Federal Aviation Agency records disclosed that the subject aircraft was registered in the name of Southern Flight Service, Inc. at that time and that two mortgages were then outstanding to Aircraft Investment Corporation, one in the amount of $30,608.16 recorded on December 14, 1959, and the other in the amount of $34,513.80 recorded on February 2, 1960.

23. The same information was subsequently confirmed as of the same date in a title abstract received by defendant Aircraft Finance Co. from Aviation Information Service, Inc.

24. Defendant Aircraft Finance Co. telephoned Aircraft Investment Corporation and, on being advised that defendant Southern Flight Service, Inc. had a good credit rating with that company, arranged to honor a draft of Aircraft Investment Corporation in sufficient amount to discharge the two mortgages to Aircraft Investment Corporation.

25. On May 18, 1960, defendant Southern Flight Service, Inc. executed and delivered a note in the principal amount of $33,497.28, payable in 36 successive monthly installments of $930.48 each, to Aircraft Finance Co., which note was secured by a chattel mortgage on the subject aircraft.

26. On the same date, the defendant Aircraft Finance Co. assigned said note and chattel mortgage to defendant First National Bank of Springfield.

27. In order to obtain the release of the two chattel mortgages outstanding to Aircraft Investment Corporation, the defendants Aircraft Finance Co. and First National Bank of Springfield paid a draft dated May 18, 1960, and drawn by Aircraft Investment Corporation on the defendants Aircraft Finance Co. and First National Bank of Springfield in the amount of $29,079.68.

28. At the time of said payment, the defendants Aircraft Finance Co. and First National Bank of Springfield obtained releases from Aircraft Investment Corporation of both of the mortgages which Aircraft Investment Corporation held on the subject aircraft.

29. The chattel mortgage to defendant Aircraft Finance Co., the assignment thereof to defendant First National Bank of Springfield and the releases of the Aircraft Investment Corporation mortgages were all forwarded by Aircraft Finance Co. to Aviation Information Service, Inc. for recordation with the Federal Aviation Agency on May 20, 1960, and were recorded by the Federal Aviation Agency on May 23, 1960.

30. The defendant Southern Flight Service, Inc. reimbursed the defendants Aircraft Finance Co. and First National Bank of Springfield in the amount of $2,079.68 toward the payment of the aforesaid draft to Aircraft Investment Corporation.

31. Not until October 1960 did defendant Aircraft Finance Co. or the defendant First National Bank of Springfield have knowledge of the sale of the subject aircraft to plaintiff on January 21, 1960.

32. On October 6, 1960, after the plaintiff had learned of the mortgage outstanding to the defendants Aircraft Finance Co. and First National Bank of Springfield, the plaintiff's bill of sale

from defendant Southern Flight Service, Inc. dated January 21, 1960, was filed for recordation with the Federal Aviation Agency and the plaintiff's application for registration of the subject aircraft was filed with said Agency on the same date.

33. The custom among title search companies which are engaged to conduct title searches of the Federal Aviation Agency records with respect to aircraft is to examine only those documents in the Federal Aviation Agency files which relate to title to and liens upon such aircraft and not to examine documents relating to airworthiness, use, inspection, alteration or repair thereof.

## DISCUSSION

▇▇▇▇ The Federal Aviation Registration Act makes provision for the recordation of conveyances affecting the title to, or interest in, civil aircraft of the United States, and provides that no such conveyance thereafter made or given shall be valid against any person other than the maker, or his heir or devisee, and any person having actual notice thereof, until so recorded.[1] The purpose of the recording provisions of the act is to protect persons who have dealt on the faith of recorded title or aircraft and as to whom it would be a fraud to give effect to unrecorded titles to their detriment, Marshall v. Bardin, 169 Kan. 534, 220 P.2d 187 (1950). The federal statute preempts any state laws which might otherwise apply. United States v. United Aircraft Corporation, 80 F. Supp. 52 (D.C.Conn.1948); In re Veterans' Air Express Co., Inc., 76 F.Supp. 684, (D.C.N.J.1948); Blalock v. Brown, 78 Ga.App. 537, 51 S.E.2d 610, 9 A.L.R. 2d 476 (1949).

Defendants Aircraft Finance Company and First National Bank recorded their chattel mortgage and assignment with the Federal Aviation Agency pursuant to this statute on May 23, 1960. The plaintiff took possession of the aircraft under a contract of sale on January 21, 1960, but failed to record his bill of sale until October 6, 1960. Defendants[2] assert that they had no actual knowledge of the prior unrecorded sale to the plaintiff, and that under the statute their title is superior to that of the plaintiff. Plaintiff seeks to be excused from the consequences flowing from his later recordation on the ground that the defendants had "actual notice" of the prior conveyance to plaintiff within the meaning of the statute.[3]

All the evidence in this case indicates that defendants did not have actual notice of plaintiff's purchase of the aircraft in the sense of having actual knowledge of that fact, or in the sense of being aware of its existence. When requested by interrogatories to provide the defendants with the names and addresses of witnesses who would testify to actual notice of the sale to plaintiff, the plaintiff's reply was "none, actual notice to be established upon inferences and pre-

---

1. 49 U.S.C.A. § 1403.

2. Defendant Southern Flight Service, Inc. is a nominal party in the suit. The word "defendants" is used hereafter to refer to Aircraft Finance Company and First National Bank of Springfield.

3. U.S.C.A. § 1403 provides in pertinent part:
 "Validity of conveyances or other instruments; filing
 "(c) No conveyance or instrument the recording of which is provided for by subsection (a) of this section shall be valid in respect of such aircraft, aircraft engines, propellers, appliances, or spare parts against any person other than the person by whom the conveyance or other instrument is made or given,

his heir or devisee, or any person having actual notice thereof, until such conveyance or other instrument is filed for recordation in the office of the Administrator * * *
 "Effect of recording
 "(d) Each conveyance or other instrument recorded by means of or under the system provided for in subsection (a) or (b) of this section shall from the time of its filing for recordation be valid as to all persons without further or other recordation, except that an instrument recorded pursuant to subsection (a) (3) of this section shall be effective only with respect to those of such items which may from time to time be situated at the designated location or locations and only while so situated * * * *"

sumptions as by law provided." While this wording would seem to indicate that the plaintiff is relying on constructive notice, it is clear from the plaintiff's briefs and his conduct of the trial that he is relying on implied actual notice as contrasted with express actual notice and does not contend that constructive notice is an issue in this case. The plaintiff contends that the term "actual notice" is used in the statute in a broader sense than express knowledge or information actually brought home to the defendants, and that it includes knowledge of inquiry-provoking facts as well as express knowledge of the ultimate fact.

■ While actual notice has been used in many senses by the courts,[4] we interpret its use in this statute in a sense broad enough to include knowledge of inquiry-provoking facts as well as express knowledge of the fact in issue. In The Tompkins, 2 Cir., 13 F.2d 552, (1926), the court held that "actual notice may be either actual knowledge or notice implied from the facts."[5] The Tompkins involved the Federal Ships Mortgage Act. The cases are in accord that this Act was used by Congress as its model for the Federal Recording Statute Relating to Aircraft. Marshall v. Bardin, 169 Kan. 534, 220 P.2d 187; Blalock v. Brown, supra. The two statutes are similar in purpose and language, and cases under the one act would seem to be authoritative under the other.

Plaintiff first contends[6] that his possession of the plane for almost four months prior to defendants' mortgage on it constitutes actual notice. The plaintiff took possession of the aircraft on January 21, 1960, and has had possession of it continuously since that time, while the defendants' mortgage was not filed for recording until May 16, 1960. The evidence further indicates that the plane was lettered "Marsden-Slade Inc., High Point, N. C." in letters 1½ feet high on both sides of the fuselage. The Plaintiff argues that possession of this nature in itself constituted notice to all persons that the possessor claimed an interest in the property, and that the defendants or anyone dealing with the property were charged with the duty of inquiring of the possessor as to the nature of his claim.[7] Plaintiff cites a Kansas case involving title to real estate, Tucker v. Vandermark, 21 Kan. 263 (1878), and a West Virginia case under the Federal Ship Mortgage Act, Hobbs, Taylor and Company v. The Steamboat Interchange, 1 W.Va. 57 (1865).

■ We think the better view, and the one which has been taken by most of the modern courts, is that possession alone is not sufficient to give third parties notice of the possessor's interest, especially

4. See Merrill on Notice 11, (1952).

5. To be distinguished from constructive notice which the court defined as "a legal inference from established facts." The Tompkins, supra, 13 F.2d page 554.

6. Plaintiff at the outset contends that, irrespective of the Federal recordation statute, he is entitled to prevail under the North Carolina cases dealing with the power of a mortgagor who is authorized by the mortgagee to sell the mortgaged goods in the ordinary course of business to sell such goods free of the mortgage. Atlantic Discount Corporation v. Young, 224 N.C. 89, 29 S.E.2d 29 (1944). But this principle is not applicable here since this is not a case in which the defendants had obtained a mortgage on the aircraft and permitted it to be held by Southern Flight Service, Inc. until the plaintiff purchased it. The plaintiff purchased the airplane in January and the defendants obtained their mortgage in May. In any event, federal law has preempted the field and local laws which respect to recordation and the perfection of liens have no application. In re Veterans' Air Express Co., supra.

7. Defendants' information at the time of making the loan was that the subject aircraft was being used by the defendant Southern Flight Service, Inc., in its charter business. Express knowledge that the plane was in the possession of plaintiff at the time their mortgage was placed on it might not therefore put them on notice of his claim even if known by defendants. Plaintiff's possession was consistent with the possibility that he had chartered the plane from Southern Fight Service, Inc.

in a context in which the property is of a kind usually protected by title papers. To hold otherwise would be to import constructive notice into the statute by the back door. The cases are clear under the Federal Aviation Registration Act and the analogous Federal Ship Mortgage Act that the plain requirement of "actual notice" in the statute may not be avoided in this manner. The Tompkins; supra, First National Bank and Trust Co. of Vicksburg, Miss. v. The Seneca, 179 F.Supp. 847 (La.D., 1960); Marrs v. Barbeau, 336 Mass. 416, 146 N.E.2d 353 (1957); Marshall v. Bardin, supra; Wilson v. Barnes, 359 Mo. 352, 221 S.W.2d 731 (1949) ("actual notice" treated as "personal knowledge"); Blalock v. Brown, supra ("actual notice" as meaning "actual knowledge"); Secrist v. German Insurance Co., 19 Ohio St. 476 (1869) ("actual notice is a fact to be found upon evidence, and is not merely a legal inference from other established facts").

 Plaintiff further contends that the presence in the Federal Aviation Agency file of a document or documents relating to airworthiness, inspection reports, alterations and repairs, and on which the plaintiff's name appears as owner of the aircraft, constitutes actual notice in the sense of inquiry-provoking facts.

It is clear from the evidence that the presence of these documents was not in fact reported to the defendants and that the defendants' title examiner did not actually see the documents.

If the title examiner had actually seen them, the case for actual notice from knowledge of inquiry-provoking facts might be a strong one. But plaintiff argues that nevertheless defendants' title examiner *should* have seen them.

It has been stipulated that all documents relating to the subject aircraft are maintained in a single file folder, with the documents relating to airworthiness, use and inspection etc. on the left side of the file while those relating to title are maintained on the right side. Among the documents maintained on the left side of the file is a "Major Repair and Alteration Form" which lists the plaintiff's name and address in the space designated for the name and address of the owner of the aircraft. The question is whether there was a duty resting on defendant's title examiner to examine both sides of the file, the non-title documents as well as the title documents.[8]

In our opinion, the defendant's title examiner had no such duty. This document was not a "conveyance" within the meaning of 49 U.S.C.A. § 1403. It did not affect the title to the aircraft and was not notarized as required by 49 U.S.C.A. § 1403(e).[9] Footnote number one of Part 503 of the Regulations of the Administration of the Federal Aviation Agency provides as follows:

> "A recordable instrument is one which purports to be a 'conveyance' as that term is defined by § 101(17) of the Federal Aviation Act. Recordation of an instrument does not mean the instrument does, in fact, affect the title to, or any interest in, an aircraft."

Defendants offered Don Manners, President of the Aero Title Clearing Service,

---

8. Plaintiff also contends that an "Aircraft Use and Inspection Report," dated April 5, 1960, and listing the plaintiff in the space designated for the owner, was also in the file and should have been seen by the title examiner. But the stamp on the document indicates it was filed on May 19, 1960, and the defendants had already advanced money to the defendant Southern Flight Service on May 18, 1960, relying on a search of the records made on May 16. This document, we find, was not in the file at the time of the title search.

In the view we take of the case, however, it would not affect the result whether the document was or was not in the file at the time of the title search.

9. "(e) No conveyance or other instrument shall be recorded unless it shall have been acknowledged before a notary public or other officer authorized by the law of the United States, or of a State, Territory, or possession thereof, or the District of Columbia, to take acknowledgement of deeds."

Inc., as an expert on aircraft title searches. He testified that the documents relating to airworthiness, etc. that are kept on the left hand side of the file are not kept in chronological order (as are the title documents) but are filed with the larger documents on the bottom of the file and the small documents at the top. He testified that it is not the custom of experienced aircraft title searchers to examine the left side of the file unless specifically requested to do so—for example, in the situation where a duplicate of a lost certificate of airworthiness is requested.

■ We think that there was no requirement for the title examiner to look at this document. In fact, the provisions of the statute do not require that such papers be placed in such a file. In First National Bank & Trust Company of Vicksburg, Miss. v. The Seneca, 179 F. Supp. 847 (La.D., 1960), a case involving the Federal Ship Mortgage Act and repairs made on a ship prior to the execution and recording of a mortgage, the court said:

> " * * * if an investor is to be given the protection intended by Congress, he should be allowed to proceed with confidence on the recorded ship's documents. He should not be required to guess who the equitable owner of the vessel may be. He should be able to rely, as to ownership at least, on the title which is recorded with the Collector of Customs as required by law.

> "Here, the bank did just that. It had the title * * * examined in the proper offices. It received the certificate of her recorded owner that no prior maritime liens existed. * * * Under the circumstances, its investment should be protected against putative owners of the vessel who, having had the vessel repaired prior to the execution of the warranty deed and ship mortgage, failed to disclose to the title owner and the bank that the bill for such repairs remained unpaid."

We think the same principle applies in this case, and that the investment made by the defendants on the strength of the record title should be protected against a purchaser who failed to record his bill of sale until after the defendants had relied upon the record title in another in the offices of the FAA.

The defendants contend that even if the mortgage was inoperative they are entitled to prevail by virtue of the principle of subrogation. They argue that since the loan from defendant Aircraft Finance Company was obtained by Southern Flight Service for the purpose of paying off the Aircraft Investment Corporation mortgages and the proceeds were employed for that purpose, the defendants Aircraft Finance Company and First National Bank of Springfield are subrogated to the rights of the Aircraft Investment Corporation.

■■ Although it is not necessary to reach this question since we have found the mortgage operative under the Federal recordation statute, we discuss it in the interest of avoiding possible additional appeals. We hold that defendants' contention is valid on the principle that one advancing money to discharge a prior lien on real or personal property, and taking a new mortgage as security, is entitled to subrogation to the prior lien, as against the holder of an intervening lien of which he was ignorant. 70 A.L.R. 1396, 1398; 50 Am.Jur. 750. Although subrogation was denied a claimant in Peek v. Wachovia Bank and Trust Company, 242 N.C. 1, 86 S.E.2d 745 (1955) on the ground that the second loan had not been made for the purpose of paying off the first mortgage, the North Carolina Supreme Court clearly approved and adopted the general rule of subrogation referred to above and cited both the annotations in 70 A.L.R. and 50 Am.Jur. We hold that the principle of subrogation in itself is a sufficient basis for a decision in favor of the defendants.

This is a hard case. Plaintiff and defendants Aircraft Finance Company are all innocent parties who acted in com-

plete good faith, and who now find themselves in court because of the fraud of a third party. Plaintiff is called to account because for convenience he left the certificate of registration with the dealer to mail to the FAA rather than personally placing it in the mail. This seems a small and human reason to be visited with such disastrous consequences. Plaintiff further testified that he had no idea that registration was required to perfect title, and that none of his other friends who fly private planes thought the registration provisions were for any other purpose than allowing the government to keep track of civilian aircraft. The fact that the bank which loaned plaintiff a portion of his purchase money only took the precautions of checking the Guilford County Register of Deeds in its title search indicates that knowledge of the FAA recording requirements is not well-known in this area. It is unfortunate that such knowledge must be acquired through hard-ship cases such as this. But hard cases, of course, should not compel a holding making bad law.

■ And in fact, the equities of the case, if not the hardship, are not altogether with the plaintiff. The burden of recording the bill of sale rested on the purchaser-plaintiff.[10] His failure to cause it to be recorded promptly caused the loss in question. He operated the plane for more than eight months without the registration certificate but was never suspicious of his failure to receive it. In flying the aircraft without having obtained a certificate of registration in this period of time, the plaintiff may

have been in violation of 49 U.S.C.A. § 1401.[11]

Our property law and commercial law necessarily place a relatively great emphasis on security of transactions. And the inviolability of recording statutes is important for the assurance of calculability of conduct and for security of transactions in a society such as ours in which there is a high degree of complexity of financial and economic life.

CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and of the subject matter.

2. An actual and substantial controversy exists between adverse parties, and there is a claim for specific relief.

3. The Federal Aviation Registration Act preempts any state laws relating to recordation which might otherwise apply.

4. The chattel mortgage in the principal amount of $33,497.33 executed by defendant Southern Flight Service, Inc. to defendant Aircraft Finance Company on May 18, 1960, constitutes a valid lien upon the subject aircraft now in the possession of the plaintiff, and the plaintiff's title and rights in respect to said aircraft are subject to said lien.

5. The defendant First National Bank of Springfield is the assignee of said chattel mortgage from Aircraft Finance Company and is entitled to the immediate possession of said aircraft for the purpose of foreclosing the lien of the said chattel mortgage.

6. In the alternative, the defendants Aircraft Finance Company and First National Bank of Springfield are subro-

10. Section 502.3 of Part 502 of the Regulations of the Administrator of the Federal Aviation Agency provides in part as follows: "(b) Transfer of ownership. Whenever the ownership of an aircraft is transferred to a person who is not the possessor or a valid dealers' aircraft registration certificate, the *purchaser* shall make application for registration of the aircraft in his name in accordance with the provisions of Part 501 of this chapter prior to the operation of the aircraft. Aircraft distributors or dealers who are operating under the terms of a dealers' aircraft registration certificate are not required to submit documentary evidence of their ownership of a particular aircraft prior to operation of the aircraft." (Emphasis added)

11. 49 U.S.C.A. § 1401 provides: "(a) It shall be unlawful for any person to operate or navigate any aircraft eligible for registration if such aircraft is not registered by its owner as provided in this section." Plaintiff operated the plane with the application for the certificate of registration form in the plane, apparently a common practice.

gated to the lien rights of Aircraft Investment Corporation under the chattel mortgage executed by the defendant Southern Flight Service, Inc. to Aircraft Investment Corporation on November 16, 1959, in the principal amount of $30,-608.16, and under the chattel mortgage executed by defendant Southern Flight Service, Inc. to Aircraft Investment Corporation of Fort Worth, Texas, on or about January 6, 1960, in the principal amount of $34,513.80. The defendants Aircraft Finance Company and First National Bank of Springfield are entitled to recover from the sale of said aircraft the amount which shall be due and owing by reason of the unpaid balance of the note executed by the defendant Southern Flight Service, Inc. on May 18, 1960.

The defendants Aircraft Finance Company and First National Bank of Springfield are requested to prepare a judgment in accordance herewith.