99 N.J. Super. 340 (1968)
240 A.2d 17
BERNARD SMITH, PLAINTIFF, MONTCLAIR NATIONAL BANK AND TRUST COMPANY, A UNITED STATES CORPORATION, INTERVENOR,
v.
EASTERN AIRMOTIVE CORP., A CORPORATION OF NEW JERSEY, HAROLD J. LAMM, JR. AND LAMM AIRCRAFT CO., A NEW JERSEY CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided February 9, 1968.
*341 Messrs. Schapira, Steiner and Walder, attorneys for plaintiff (Mr. Harry Steiner, appearing).
Messrs. Keer, Booth, Buermann and Bate, attorneys for intervenor (Mr. George R. Harris appearing).
Messrs. Major and Major, attorneys for defendant Eastern Airmotive Corp. (Mr. James A. Major, appearing).
*342 LORA, J.S.C.
Montclair National Bank and Trust Company (bank) and Eastern Airmotive Corporation (Eastern) have filed cross-motions seeking a determination of priority between a federally recorded security interest in an aircraft and an aircraft mechanic's possessory lien for repair work done and storage charges incurred.
The facts are undisputed. Bernard Smith of Crestwood, New York, bought a Cessna Model 172 airplane for $16,300 on January 14, 1966. The Bank financed the purchase, $11,460.79 now remaining unpaid. Its security interest was recorded with the Federal Aviation Agency (FAA) on February 3, 1966.
Smith leased the plane to Harold Lamm, Jr. While in Lamm's custody, the aircraft was damaged and turned over by him to Eastern for repair in July 1966.
This action was brought by Smith after receiving notice of Eastern's intention to sell the aircraft at public sale to satisfy its claimed lien for repairs and storage, the bill amounting to $6,139.84, including $2,125 for 14 months storage at $5 a day. Eastern has not recorded its aircraft lien. The bank, holder of the security interest, intervened, challenging the priority of Eastern's possessory lien. Lamm is in default.
After Eastern was enjoined from proceeding with the sale, the plane was sold by agreement of all parties to the General Aviation Co. for $7,000. without prejudice to the rights of the parties, which are to be determined as if the sale had been made pursuant to court order. The aforesaid agreement of the parties rendered academic the court's reservations as to its jurisdiction to enjoin the sale, it having been the court's opinion that perhaps Smith was constrained to proceed at law in accordance with N.J.S. 2A:44-4.
Under New Jersey law the lien of an aircraft mechanic, unlike the lien of an automobile mechanic (N.J.S. 2A: 44-21) has, by statute, express priority over a perfected security interest. N.J.S. 2A:44-2 states:
*343 "Any person, engaged in the business of operating a hangar or place for the storage, maintenance, keeping or repairing of aircraft who, in connection therewith, stores, maintains, keeps or repairs any aircraft or furnishes gasoline, accessories, materials or other supplies therefor at the request or with the consent of the owner or his representative, agent or lessee, whether such owner be a conditional vendee or a mortgagor remaining in possession or otherwise, shall have a lien upon such aircraft or any part thereof for the sum due for such storing, maintaining, keeping or repairing of such aircraft or for furnishing gasoline, accessories, materials or other supplies therefor, and may, without process of law, detain such aircraft at any time it is lawfully in his possession until such sum is paid.
The lien shall be superior to all other liens, except liens for taxes, and the operator of such aircraft shall be deemed the agent of any owner, mortgagee, conditional vendor or other lienor thereof for the creation of such superior lien."
Section 9-310 of the Uniform Commercial Code provides:
"When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise." N.J.S. 12A:9-310.
The New Jersey Study Committee Comment to 12A:9-310, in discussing aircraft liens under Note 3 states:
"A qualified lien and lienholder under N.J. Stat. 2A:44-1 et seq. would, pursuant to § 9-310, take priority over a perfected security interest under Article 9."
The New Jersey Aircraft Mechanics Lien Statute originated in the Laws of 1934. In 1938 Congress enacted the predecessor of the present 49 U.S.C.A. § 1403. The federal statute now provides:
"(a) The Administrator shall establish and maintain a system for the recording of each and all of the following:
(1) Any conveyance which affects the title to, or any interest in, any civil aircraft of the United States; * * *

* * * * * * * *
*344 (c) No conveyance or instrument the recording of which is provided for by subsection (a) of this section shall be valid in respect of such aircraft, aircraft engine or engines, propellers, appliances or spare parts against any person other than the person by whom the conveyance or other instrument is made or given, his heir or devisee, or any person having actual notice thereof, until such conveyance or other instrument is filed for recordation in the office of the Administrator.

* * * * * * * *
(d) Each conveyance or other instrument recorded by means of or under the system provided for in subsection (a) or (b) of this section shall from the time of its filing for recordation be valid as to all persons without further or other recordation, except * * * [the exception is not applicable here]."
The reported federal and state court cases that have considered the question have all held that, notwithstanding state laws to the contrary, 49 U.S.C.A. § 1403 gives a validly recorded security interest priority over an unrecorded possessory mechanic's lien.
In the leading case of In re Veterans' Air Express Co., Inc., 76 F. Supp. 684 (D.C.N.J. 1948), the California Civil Code would have given priority to the possessory lien of a company which repaired, overhauled, reconditioned and converted two aircraft without seeking or obtaining the consent of the United States Government, which held chattel mortgages on the planes executed when the Government sold the planes and recorded with the then Civil Aeronautics Administration. Relying upon the Commerce Clause of the United States Constitution, the court stated:
"Since, then, this court is of the opinion that the regulatory provisions of recordation in accordance with the Civil Aeronautics Act is within the scope of proper application of Federal Law in a field of Federal competence, the lien claimed by the United States of America is senior to any claim established under a State Law affecting the same object." (at p. 690)
While it is true that the United States Government was the prevailing party in that action, and the court indicated an alternate ground for its holding  "Federal statutes may declare liens in favor of the Government nad [sic] establish *345 their priority over subsequent purchasers or lienors irrespective of state recording acts," ibid. at p. 690  yet sovereign immunity has not been the only basis for so holding, as is shown by the subsequent case of United States v. United Aircraft Corp., 80 F. Supp. 52 (D.C. Conn. 1948).
In this later case a possessory artificer's lien on the plane's engines was held prior to a purchase money chattel mortgage on the aircraft held by the United States because the mortgage as recorded did not contain a sufficient description of the engines, only the number of the aircraft itself having been recorded and not the serial numbers of its individual engines, Ibid., at p. 54. The federal court rejected the Government's sovereign immunity theory, saying:
"Liens on government property might well cripple the United States in carrying out its sovereign functions. No such danger is apparent in applying to the United States, as the holder of security for a debt, the same rules as to validity and priority of security as are applied to any citizen." (at p. 55)
Although the court held in favor of the artificer, it rejected its contention that the priority given by Connecticut law to an artificer's lien over a chattel mortgage applied, and reiterated that Congress had preempted the field of liens on aircraft and that federal law was controlling.
The District Court did not reach the question of whether, had the Government's chattel mortgage been validly recorded as to the engines, the artificer's lien could take precedence over the mortgage.
Possession, without more, does not constitute sufficient notice of an interest in an airplane to third parties. In Marsden v. Southern Flight Service, Inc., 227 F. Supp. 411 (D.C.M.D.N.C. 1964), plaintiff purchased an airplane in January 1960 but failed to record his interest with the FAA. until October 1960. The buyer emblazoned his name on both sides of the fuselage in letters 1 1/2 feet high and retained possession of the craft. The seller mortgaged the craft to defendants in May. Defendants, who had recorded *346 their interest in May 1960, were held not to have had actual notice, the court saying:
"The cases are clear under the Federal Aviation Registration Act and the analogous Federal Ship Mortgage Act that the plain requirement of `actual notice' in the statute may not be avoided in this manner." (at p. 417)
This Court agrees with the Texas Court of Civil Appeals, which concluded in the case of Continental Radio Co. v. Continental Bank and Trust Co., 369 S.W.2d 359 (1963):
"It is our opinion that Congress clearly undertook to pre-empt the field of conveyancing of interests in aircraft and portions thereof to facilitate the control and promotion of air commerce. The recordation provisions of the Federal Aviation Act are within the scope of proper application of Federal law in a field of Federal competence. Congress has prescribed the only way in which aircraft may be transferred and in which liens upon aircraft may be duly recorded. The statute voids as to third parties without actual notice conveyances and liens which are not duly recorded. [Citations omitted]
It is settled that the Constitution and statutes of the State of Texas must yield to conflicting provisions of Congressional Acts and Federal Regulations pursuant thereto pertaining to subjects which are within the scope of Federal power." (Emphasis supplied)
The California Appeals has considered inapplicable, in the face of 49 U.S.C.A. § 1403, the provision of the Uniform Commercial Code, § 9-314, giving a security interest in accessions to personal property (there being aircraft motors) priority over a security interest in the whole (being the aircraft). See International Atlas Serv. v. Twentieth Cent. A. Co., 59 Cal. Rptr. 495 (1967), which held that although plaintiff's interest in aircraft engines installed by it in an aircraft of a conditional buyer pursuant to a maintenance agreement between them would have been superior to the interest of the conditional seller upon the seller's repossession of the aircraft under state law, plaintiff's failure to record its interest in the engines so installed with the Aircraft Records Branch of the Federal Aviation Agency in *347 Oklahoma City, in accordance with the Federal Aviation Act, prior to repossession of the aircraft by the conditional seller resulted in subordination of plaintiff's interest in the engines to the properly recorded interest of the seller in the aircraft as a whole.
The California court went on to say:
"Nevertheless, we have concluded that California law does not apply to this case, that the controversy is governed by the laws of the United States, and that under federal law Twentieth Century must prevail. As we see it, general California law on the subject of title and liens to personal property in relation to component parts has been superseded by specific federal law with respect to aircraft.

* * * * * * * *
Here we have a complete and comprehensive system of recordation which necessarily supersedes inconsistent state law. Constitutionally, the federal government may be said to have fully occupied the field of recordation of interests in aircraft and of rights derived from recordation, and to have established paramount law in this area. Atlas could have fully protected its rights in these engines and preserved a good title throughout the world by taking advantage of this national system of recordation and recording its interest in specifically numbered aircraft engines with the Federal Aviation Agency. Its failure to record in Oklahoma City its ownership of the engines prior to repossession of the aircraft by Twentieth Century resulted in the subordination of its interest in the engines to the recorded interest of Twentieth Century in the aircraft as a whole. The latter, by recording with the Federal Aviation Authority, established a superior right to the aircraft, its engines, and its propellers, effective against all other interests in the aircraft except known or recorded adverse interests. This paramount interest under federal law effectively superseded any inconsistent interest derived from state law." (at pp. 497, 498)
To avoid the impact of the recordation statute, Eastern argues that the provisions of the law are limited to the recordation of security interests; that the work done by it on the aircraft and the storage of same does not fall within the classification of a transaction executed for security purposes, and is not within the comprehension of the language of 49 U.S.C.A. § 1403(a)(1)  "any conveyance which affects the title to, or any interest in, any civil aircraft of the United States", or of § 1403(a)(2)  "any lease, and any mortgage, *348 equipment trust, contract of conditional sale, or other instrument executed for security purposes, which lease or other instrument affects the title to, or any interest in, any specifically identified aircraft engine (over 750 horsepower) * * *." (Emphasis supplied)
Eastern further argues that its lien arose to secure a claim arising from work which enhanced or preserved the value of the bank's collateral, and hence takes priority over the bank's earlier and perfected security interest.
In the first instance, it would appear there is some support for Eastern's contention in Marsden v. Southern Flight Service, Inc., supra, 227 F. Supp., at p. 417, which held the presence in the F.A.A. file of documents relating to air worthiness, inspection reports, alterations and repairs, and on which the aircraft buyer's name appeared as owner of the aircraft, did not constitute actual notice to a chattel mortgagee in the sense of inquiry-provoking facts, on the ground that the title examiner had a duty to examine the nontitle documents as well as title documents of the folder, since the documents were not a "conveyance" within the section and did not affect title to aircraft and were not notarized as required by the act.
In Marsden the court said:
"It is clear from the evidence that the presence of these documents was not in fact reported to the defendants and that the defendants' title examiner did not actually see the documents.
If the title examiner had actually seen them, the case for actual notice from knowledge of inquiry-provoking facts might be a strong one. But plaintiff argues that nevertheless defendants' title examiner should have seen them.
It has been stipulated that all documents relating to the subject aircraft are maintained in a single file folder, with the documents relating to airworthiness, use and inspection etc. on the left side of the file while those relating to title are maintained on the right side. Among the documents maintained on the left side of the file is a `Major Repair and Alteration Form' which lists the plaintiff's name and address in the space designated for the name and address of the owner of the aircraft. The question is whether there was a duty resting on defendants title examiner to examine both sides of the file, the non-title documents as well as the title documents.
*349 In our opinion, the defendant's title examiner had no such duty. This document was not a `conveyance' within the meaning of 49 U.S.C.A. § 1403. It did not affect the title to the aircraft and was not notarized as required by 49 U.S.C.A. § 1403(e). Footnote number one of Part 503 of the Regulations of the Administration of the Federal Aviation Agency provides as follows:
`A recordable instrument is one which purports to be a "conveyance" as that term is defined by § 101(17) of the Federal Aviation Act. Recordation of an instrument does not mean the instrument does, in fact, affect the title to, or any interest in, an aircraft.'
Defendants offered Don Manners, President of the Aero Title Clearing Service, Inc., as an expert on aircraft title searches. He testified that the documents relating to airworthiness, etc. that are kept on the left hand side of the file are not kept in chronological order (as are the title documents) but are filed with the larger documents on the bottom of the file and the small documents at the top. He testified that it is not the custom of experienced aircraft title searchers to examine the left side of the file unless specifically requested to do so  for example, in the situation where a duplicate of a lost certificate of airworthiness is requested.
We think that there was no requirement for the title examiner to look at this document. In fact, the provisions of the statute do not require that such papers be placed in such a file."
However, it is clear that the documents which were involved in the Marsden decision must be distinguished from the "title documents" discussed in the other cases cited in this opinion. The "Major Repair and Alteration Form" obviously was a nontitle document filed by the owner, and not an aircraft mechanic's notice or lien recorded by an artisan to perfect his lien.
Section 1403(g) of the Federal Aviation Act, entitled "Regulations," provides that the Administrator is authorized to provide by regulation for the recording of "other transactions affecting title to or interest in aircraft, aircraft engines, propellers, appliances or parts, and for such other records, proceedings, and details as may be necessary to facilitate the determination of the rights of parties dealing with civil aircraft of the United States, aircraft engines, propellers, appliances, or parts."
*350 The bank, by affidavit with an attached typical search made by the Aero Title Clearing Service, Inc., has demonstrated and the court concludes that an aircraft repairman's lien for labor and materials furnished may be recorded, and such liens have in fact been recorded with the F.A.A.
See also Continental Radio Co. v. Continental Bank and Trust Co., supra, 369 S.W.2d 359, where appellant Radio Company contended it acquired a constitutional lien on an airplane under the Texas Constitution by virtue of labor performed and materials provided in the installation of an auto-pilot and related instruments in the plane, and that the lien so acquired was prior in right to the subsequently acquired chattel mortgage lien held by the bank, which bank lien was secured without knowledge, actual or constructive, of the Radio Company's lien.
As to the artisan's lien the court stated:
"The lien granted is not created by, and does not exist by virtue of, any instrument in writing or legislation since the constitutional provision is self-executing. * * *
No laws have been enacted providing for the filing or recording of affidavits or in any other way giving statutory constructive notice of the constitutional artisan's lien on chattels."
The Texas court found that the appellant had sent to the FAA. a letter claiming its constitutional lien on the plane and certain documents evidencing it. None of these instruments complied with the then statutory requirements for filing. The court therefore concluded:
"While appellee did not examine the instruments recorded as required by the Federal Aviation Act, constructive notice of the constitutional lien claimed by appellants was not visited on it because the lien would not have been disclosed by an examination of the instruments properly filed with the Agency. Miles v. Martin, 159 Tex. 336, 321 S.W.2d 62; Strong v. Strong, 128 Tex. 470, 98 S.W.2d 346, 109 A.L.R. 739."
This court noted that § 1403(e) then provided:
*351 "No conveyance or other instrument shall be recorded unless it shall have been acknowledged before a notary public or other officer authorized by the law of the United States, or of a State, Territory, or Possession thereof, or the District of Columbia, to take acknowledgement of deeds."
It would appear, therefore, that if properly acknowledged in accordance with the then existing law and regulations, the letter and documents in the Continental Radio case would have been considered as having been legally recorded and to have constituted notice to the world.
Then, too, in United States v. United Aircraft Corp., supra, 80 F. Supp., at p. 55, it was held where repairs by an artificer to an aircraft engine were not immediately necessary because of an unexpected emergency, an artificer lien was not entitled to priority over a previous chattel mortgage, by analogy to admiralty rules.
It is this court's opinion that § 12A:9-310 of the Uniform Commercial Code and N.J.S. 2A:44-2, which would purport to give priority to an unrecorded aircraft mechanic's lien over a federally recorded security interest, are ineffective in the face of 49 U.S.C.A. § 1403. Additionally, it is noted that under N.J.S. 12A:9-302(3):
"The filing provisions of this Chapter do not apply to a security interest in property subject to a statute
(a) of the United States which provides for a national registration or filing of all security interests in such property, * * *"
See note 3 of New Jersey Study Committee comment regarding aircraft.
As noted by the court in Veterans Air Express, supra, "conveyance" as used in 49 U.S.C.A., § 1403 is defined in § 1301(17) of the act as a "bill of sale, contract of conditional sale, mortgage, assignment of mortgage, or other instrument affecting title to, or interest in, property."
Section 503.2 of the regulations in effect at the time of the Veterans Air Express determination, entitled "Eligibility," provided that a conveyance was eligible for recordation only if:
*352 "(a) It is accompanied by a duly executed application for registration, together with all the documents required by Section 501.2 of the Regulations of the Administrator of Civil Aeronautics: Provided, that this paragraph shall not apply to conveyances affecting an interest in, but not title to the aircraft."
Part 49 of the F.A.A. regulations, entitled "Recording of Aircraft Titles and Security Documents (New)," effective August 18, 1964, published in 29 F.R. 6485, May 19, 1964, deleted Parts 501, 502, 503, 504 and 505 and reduced to two the number of these related regulations on registration and recordation.
As of May 1, 1966 the Federal Aviation Act was amended to remove the acknowledgement requirement, and regulation § 49.13(c) now reads:
"No conveyance or other instrument need be acknowledged, as provided in section 503 (e) of the Federal Aviation Act of 1958 (49 U.S.C. 1403 (e)), in order to be recorded under this Part. The law of the place of delivery of the conveyance determines when a conveyance or other instrument must be acknowledged in order to be valid for the purposes of that place."
New subpart C  "Aircraft Ownership and Encumberances Against Aircraft," in § 49.31 states:
"This subpart applies to the recording of the following kinds of conveyances:
(a) A bill of sale, contract of conditional sale, assignment of an interest under a contract of conditional sale, mortgage, assignment of mortgage, lease, equipment trust, notice of tax lien or of other lien, or other instrument affecting title to, or any interest in, aircraft.
(b) A release, cancellation, discharge, or satisfaction of a conveyance named in paragraph (a)."
Quoting again from Veterans Air Express, supra, 76 F. Supp., at p. 688:
*353 "It is clear that the Congress has prescribed the only way in which aircraft may be transferred and in which liens upon aircraft may be duly recorded. In this manner, all persons dealing with aircraft are upon full legal notice concerning possible liens and are charged with the duty of inquiry at the Central Recording Office of the Civil Aeronautics Administration with respect to any aircraft in which they might be concerned." (Emphasis supplied)
See also Blalock v. Brown, 78 Ga. App. 537, 51 S.E.2d 610; 9 A.L.R.2d 476 (Ga. Ct. App. 1949), holding the recording provisions of the Civil Aeronautics Administration Act apply also to airplanes used and intended for use only in intrastate commerce, and citing Atlantic Trust Co. v. The Vigilancia, 73 F. 452 (2 Cir. 1896), where it was said:
"A lienor of a vessel owned in New York cannot secure priority over previous mortgages thereon by showing that they were not filed and refiled, as required by the state laws relating to chattel mortgages, when it appears that they were recorded in the office of the Collector of the Port of New York before he acquired his lien; for state statutes are inoperative as to vessel mortgages which have been properly recorded, pursuant to the laws of the United States"
and the decisions of the cases relating to the recording provisions of the United States statute dealing with vessels which are so much akin to the recording provisions of airplanes with the Civil Aeronautic Administrator, are controlling.
The facts in this case do not require consideration nor disposition of the question of whether a federally recorded aircraft mechanic's notice of intention or lien would take priority over a previously federally recorded security interest. However, as set forth in the cases above cited, Congress' preemption of the field of aircraft liens and titles, and its policy requiring centralized recordation of interests in aircraft, at a time when airplanes travel from one end of the country to the other in a matter of a few short hours, leads this court to conclude that the recorded security interest of the Montclair National Bank and Trust Company has priority *354 over Eastern Airmotive's unrecorded aircraft repair and storage lien.
"It is `familiar doctrine' that the federal policy `may not be set at naught, or its benefits denied' by the State law." Sears Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 229, 84 S.Ct. 784, 787, 11 L.Ed.2d 661 (1964); Rehearing denied 376 U.S. 793, 84 S.Ct. 1131, 12 L.Ed.2d 87 (1964).