SOUTH SHORE BANK vs. H & H AIRCRAFT SALES, INC.
& others.[1]

Norfolk. April 11, 1983. — August 3, 1983.

Present: GREANEY, CUTTER, & PERRETTA, JJ.

*Notice. Aircraft,* Transfer of title, Security interest, Unrecorded sale.
*Bank. Words,* "Actual notice."

Where a bank, acting without actual notice of a prior sale of an aircraft,
and relying upon a debtor's record title, acquired a security interest in
the aircraft, the bank's security interest prevailed, pursuant to § 503 of
the Federal Aviation Act of 1958, 49 U.S.C. § 1403 (1976), over a
claim to title based on an earlier unrecorded purchase of the same air-
craft. [474-476]

A contention, not made in the course of summary judgment proceedings,
that certain circumstances, taken together, constituted inquiry-
provoking facts amounting to actual notice to a bank that there had
been a prior unrecorded sale of an aircraft in which it took a security
interest, could not be raised for the first time on appeal. [476-480]

CIVIL ACTION commenced in the Superior Court Depart-
ment on March 12, 1982.

The case was heard by *Lynch*, J.

*Frederick S. Pillsbury* for Olympic Sales Club, Inc., &
another.

*William F. Macauley* for the plaintiff.

CUTTER, J.  On August 3, 1979, Olympic Sales Club, Inc.
(Olympic), made a contract to purchase a specified 1980
Piper Aztec aircraft for $172,000 from an aircraft dealer,
H & H Aircraft Sales, Inc. (H & H), of Monroe, New York.
A down payment by check was made. The aircraft was deliv-
ered by H & H to Olympic in Massachusetts on October 31,

---

[1] Olympic Sales Club, Inc., and Arthur O'Hara, its president and prin-
cipal stockholder.

1979. The balance of the price was then paid by Olympic, which since that date has had possession of the aircraft.

Olympic, through O'Hara (see n.1), asked H & H to change the aircraft's registration number with the Federal Aviation Administration (FAA) to a new number. H & H undertook to do this and also stated that it would register the transfer of ownership from H & H to Olympic. It did change the registration number to N1946D, but did not record with the FAA the bill of sale concerning the transfer of ownership.

On behalf of the South Shore Bank (the bank), Samuel L. Peoples, a second vice president and a loan officer, made loans to H & H, on December 14 and 26, 1979, and March 4, 1980, and received H & H's notes incorporated in three documents entitled "Security Agreement-Aircraft Chattel Mortgage" (security agreements). The loans were in principal amounts of $86,000, $31,000, and $85,000, respectively, and bore annual interest at two percent above the prime rate in effect from time to time. Each security agreement gave to the bank (1) a security interest in the Piper Aztec aircraft, FAA registration no. N1946D (formerly N2137Z), and (2) the rights and, in the event of default, the remedies of a secured party under the Uniform Commercial Code (U.C.C.), including the right to take possession of the aircraft.

Before making each loan, Peoples obtained a FAA title search of the FAA registry at Oklahoma City which indicated that H & H was the registered owner of the aircraft. The bank recorded its lien with the FAA on January 18, 1980. H & H committed defaults under the security agreements by February 26, 1981. The bank sought to take possession of the aircraft. Peoples then learned that H & H had sold the aircraft to Olympic before any of the bank's loans to H & H had been made. Olympic had not recorded its bill of sale with the FAA by January 18, 1980 (when the bank recorded its security interest) and, so far as the present record shows, Olympic's interest never has been recorded with the FAA.

The complaint in the present action was filed on March 12, 1981. It sought damages, an injunction against transfer

of the aircraft, possession of the aircraft, and declaratory relief. Temporary injunctive relief was granted. The bank, on the one hand, and Olympic and O'Hara, on the other hand, respectively, filed motions for summary judgment, supported by affidavits, from which, together with the pleadings and the judge's memorandum of decision, the facts above have been stated.

Summary judgment was granted in favor of the bank which was declared to be entitled to immediate possession of the aircraft. Olympic and O'Hara have appealed.

1. The Federal Aviation Act of 1958 (hereafter "the Act"), § 503, 49 U.S.C. § 1403 (1976), controls important aspects of the present case, as the trial judge recognized. The pertinent provisions of that statute are set out in the margin.[2] They, especially subsection (c), recently have been discussed in *Philko Aviation, Inc.* v. *Shacket*, 462 U.S. 406 (1983), where it was held (at 409-410) that § 1403(c) "means that every aircraft transfer must be evidenced by an instrument, and every such instrument must be recorded, before the rights of innocent third parties can be affected." It was held also (at 410) that "state laws permitting undocumented or unrecorded transfers are pre-empted" by the Federal stat-

---

[2] Section 1403 reads in part: "(a) The Secretary of Transportation shall establish and maintain a system for the recording of each and all of the following:

"(1) Any conveyance which affects the title to, or any interest in, any civil aircraft of the United States. . . .

[Subsections (a)(2) and (a)(3) relate to instruments establishing security interests in, or affecting title to, certain aircraft engines and parts. Subsection (b) relates to releases of interests.]

"(c) No conveyance or instrument the recording of which is provided for by subsection (a) of this section shall be valid in respect of such aircraft . . . against any person other than the person by whom the conveyance or other instrument is made or given, his heir or devisee, or any person having actual notice thereof, until such conveyance or other instrument is filed for recordation in the office of the Secretary of Transportation: *Provided* . . . . [Proviso relates to instruments recorded under prior statutes.]

"(d) Each conveyance or other instrument recorded by means of or under the system provided for in subsection (a) or (b) of this section shall from the time of its filing for recordation be valid as to all persons without further or other recordation. . . . [Exception and proviso relate to items recorded under subsections (a)(2) and (a)(3)]."

ute which was (*ibid.*) "intended to preempt any state law under which a transfer without a recordable conveyance would be valid against innocent transferees or lienholders who have recorded."

The *Philko* case dealt (see 406) with two successive sales of the same aircraft. The first was to the Shackets (husband and wife) who "paid the . . . price in full and took possession of the aircraft." Their vendor told them "that he would 'take care of the paperwork,' which the Shackets understood to include . . . recordation . . . with the FAA." The *Philko* record revealed no effort by the Shackets (apart from their reliance on their vendor to do so) to record their title (as was the situation with Olympic so far as the present record discloses). Thereafter the same vendor purported to sell the same aircraft to Philko, whose bank subsequently recorded the title documents with the FAA. The Federal District Court (497 F. Supp. 1262, N.D. Ill. 1980) granted summary judgment in favor of the Shackets, and the Court of Appeals (681 F.2d 506, 7th Cir. 1982) affirmed judgment for the Shackets. The Supreme Court, however, reversed the judgment and remanded the case for further proceedings. We think that the *Philko* case governs the situation in the present case, where Olympic's title interest in the Piper aircraft was never recorded and thus (apart from considerations discussed below) could have no effect against the lien interest of the bank which was recorded with the FAA fairly promptly.

The *Philko* case and the facts (see note 5, *infra*) make it unnecessary to decide a much discussed question of priorities under § 9-307 of the U.C.C. (see G. L. c. 106, § 9-307, and New York Uniform Commercial Code Law § 9-307 [McKinney Supp. 1982-1983])[3] viz., whether a later purchaser of an aircraft (who does not record with the FAA his bill of sale) from an aircraft dealer takes free of a bank's

---

[3] The record suggests no State other than Massachusetts or New York in which the bill of sale of the Piper aircraft or the aircraft itself was delivered. See § 506 of the Act, 49 U.S.C. § 1406 (1976).

prior recorded security interest.[4]   The *Philko* case (at
412-413), after a reference to Judge Wisdom's opinion in *In
re Gary Aircraft Corp.*, 681 F.2d 365 (5th Cir. 1982), cert.
denied sub nom. *General Dynamics Corp.* v. *Gary Aircraft
Corp.*, 462 U.S. 1131 (1983), proceeds, "Although state law
determines priorities, all interests must be federally record-
ed before they can obtain whatever priority to which they
are entitled under state law."   As the present record shows no
recording with the FAA of H & H's bill of sale to Olympic at
any time, we need not concern ourselves with this question.[5]

2. The *Philko* case (at 414) decides that the lower Federal
courts, there reversed, "erred by granting the Shackets sum-
mary judgment on the basis that if an unrecorded transfer of
an aircraft is valid under state law, it has validity as against
innocent third parties."   The opinion, in remanding the
case for further findings, then points out that, because the
Federal District Court had dealt with the *Philko* situation
by summary judgment, it did not consider questions such as
whether (a) "Philko had actual notice of the transfer to the
Shackets" or (b) "the transferee ha[d] used reasonable dili-

---

[4] The considerations affecting this issue are discussed in the text, numer-
ous decisions, and periodical authorities mentioned in *In re Gary Aircraft
Corp.*, 681 F.2d 365, 368-369 (5th Cir. 1982), cert. denied sub nom.
*General Dynamics Corp.* v. *Gary Aircraft Corp.*, 462 U.S. 1131 (1983).
To these may be added Eyer, The Sale, Leasing, and Financing of Aircraft,
45 J. Air L. & Com. 217 (1979); Ganz, Code-Secured Transactions and the
Federal Aviation Act — A Limited Preemption, 14 U.C.C. L.J. 3 (1981).

[5] It should be noted that, under the *Philko* decision, when the bank
made its loans to H & H (recorded as security interests with the FAA on
January 18, 1980), the bill of sale, because not recorded with the FAA,
was not valid as against the bank.   The bank, in making the loans,
changed its position in reliance on the FAA records.   Each security agree-
ment relates (as has been stated) to the particular aircraft and has not
been shown to have been a part of an inventory loan.   As to an inventory
loan, a lending bank may contemplate that the aircraft collateral *later*
will be sold in the ordinary course of business and may assume *for the
future* the risk of such a sale.   These agreements, however, provided that
H & H "will not sell, transfer or otherwise dispose of" the collateral.   That
this bank did not assume *for the past* any risk of sale is shown by H & H's
covenant that "except for the security interest granted . . . [to the bank,
H & H] is the owner of the . . . [aircraft] free from any . . . encumbrance,
or right, title or interest of others."   Seasonable inquiry by Peoples about
the FAA's records amounted to verification of this covenant.

gence to file [with the FAA] and cannot be faulted for the failure of the crucial documents to be of record."

In the present case, Olympic and O'Hara merely left it to H & H to do the recording and thus facilitated the perpetration of the scheme by which H & H obtained loans from the bank on the security of the Piper aircraft. This behavior was like that of the Shackets in the *Philko* case. On appeal, however, Olympic now argues that the bank had "actual notice" of the sale to Olympic of the Piper aircraft as a consequence of (a) an alleged deposit in H & H's account at the bank of Olympic's downpayment check for $34,400, dated August 3, 1979, over four months before the bank took the earliest security agreement (December 14, 1979);[6] (b) the delivery of the Piper aircraft to Olympic on October 31, 1979; (c) the circumstance that Olympic kept the aircraft at an airport in Westfield, Massachusetts, and not at H & H's home airport in Monroe, New York, the location of the aircraft mentioned in two of the security agreements; (d) the failure of the bank to check whether H & H had possession of the aircraft when it took the first security agreement; and (e) the circumstance that the total loans by the bank to H & H had an aggregate principal amount of $202,000, whereas the price paid to H & H by Olympic in October, 1979, was only $172,000. Olympic argues on appeal that these circumstances, taken together, constitute "inquiry-provoking facts" which "amount to 'actual notice.'"

Olympic did not assert in its answer that the bank had actual notice of H & H's sale to it. "Actual notice" would appear to be an affirmative defense. See Mass.R.Civ.P. 8(c), 365 Mass. 750 (1974); Smith & Zobel, Rules Practice §§ 8.6, 8.7 & 8.22 (1974 & Supp. 1981). Certainly, the burden of showing knowledge of an unrecorded conveyance is on the party claiming under it. *Hughes* v. *Williams*, 229 Mass.

---

[6] We give this no significance. The receipt of such a deposit (without a statement of other facts), several months before the first bank loan here in issue, cannot be regarded as notice to the bank of a particular sale. Compare *Texas Natl. Bank* v. *Aufderheide*, 235 F. Supp. 599, 605 (E.D. Ark. 1964).

467, 469-471 (1918). *McCarthy* v. *Lane*, 301 Mass. 125, 128-129 (1938). See *Atlantic Trans. Co.* v. *Alexander Shipping Co.*, 261 Mass. 1, 7-9 (1927), where the Supreme Judicial Court discussed the term "actual notice" as used in the Federal Ship Mortgage Act, 46 U.S.C. § 921(a) (1976),[7] and held by analogy that the term had the same meaning as "actual notice" in G. L. c. 183, § 4. "[K]nowledge of facts which might arouse suspicion [of an unrecorded instrument] would not be sufficient to destroy the bona fides of the subsequent purchaser." See *Richardson* v. *Lee Realty Corp.*, 364 Mass. 632, 634-635 (1974).

It may be that the term "actual notice" as used in § 1403(c) includes knowledge of facts which provoke inquiry. See *Marsden* v. *Southern Flight Serv., Inc.*, 227 F. Supp. 411, 416-417 (M.D. N.C. 1961). That decision (at 416) interpreted "actual notice" as used in § 1403(c) "in a sense broad enough to include knowledge of inquiry-provoking facts as well as express knowledge of the fact in issue." It proceeded, nevertheless (at 416-417), to treat "possession alone . . . [as] not sufficient to give third parties notice of the possessor's interest, especially in a context in which the property is of a kind usually protected by title papers. To hold otherwise would be to import constructive notice into the statute by the back door."[8] See *South Shore Bank* v. *Tony Mat, Inc.*, Civ. No. 82-0330 (M.D. Pa. Sept. 22, 1982). Contrast *Aircraft Inv. Corp.* v. *Fisher Flying Serv., Inc.*, 183 So.2d 441, 445 (La. Ct. App.) aff'd, 249 La. 374 (1966).

---

[7] This statute formed at least in part the basis of the aircraft recording statute, 49 U.S.C. § 1403 (1976), discussed in the *Philko* case. See *Marsden* v. *Southern Flight Serv., Inc.*, 227 F. Supp. 411, 416 (M.D. N.C. 1961).

[8] The *Marsden* case, at 417, refers to *Marrs* v. *Barbeau*, 336 Mass. 416 (1957), which, at 420, recognized that (under a predecessor of § 1403[c]) the holder of an unrecorded conveyance of an aircraft by "leaving the record title in . . . [his vendor gave that vendor] a power to transfer title to a bona fide purchaser." The *Marsden* case is discussed ably in Sigman, The Wild Blue Yonder: Interests in Aircraft Under Our Federal System, 46 S. Cal. L. Rev. 316, 354-357 (1973). The *Philko* case (at 413) cited the article for pointing out that, although recordation of a conveyance with the FAA may "not establish priority, 'failure to record . . . serves to subordinate'" the unrecorded conveyance to pertinent recorded interests in the aircraft.

Nothing in the pleadings in the Superior Court or in the affidavits suggests that there was any general practice of banks physically to inspect aircraft which they were taking as collateral under security agreements. Indeed, the purpose of the Federal recording system in part would be defeated by such a requirement which in effect would tend to remove from "any buyer in possession . . . [all] incentive to record his title with the FAA, . . . thereby prevent[ing] the 'central clearing house' from providing 'ready access' to information about his claim." *Philko* case, at 411. The bank in Quincy, Massachusetts, has not been shown, at least on this record, to have been under any obligation of good business practice to do more with respect to an aircraft, likely to be near H & H's place of business in New York, than to check the title records of the FAA.

No persuasive reason has been advanced by Olympic for regarding the size of the bank's advances on the security agreements as evidence that the bank knew of the sale of the aircraft for a lesser amount. Indeed, had the bank known that H & H would sell an aircraft for as little as $172,000, it might not have made its final advance.

What has been said above indicates the highly fragile basis which, on this record, Olympic has for asserting, for the first time on appeal, that the bank had "actual notice" of the unrecorded sale to it of the aircraft. This is wholly apart from the circumstance that no such defense was pleaded.

When both contestants in the Superior Court moved for summary judgment, they each in effect represented that there were no genuine issues of material fact (such as "actual notice") remaining unsettled. The trial judge dealt with the case on that basis.[9] He stated in the summary of his decision that "the [b]ank took a security interest in the aircraft *without actual notice* of the prior sale and on the strength of record title" (emphasis supplied). In his discus-

---

[9] Examination of the original briefs submitted to the trial judge shows that no argument was made that the bank had actual notice of the sale of the aircraft to Olympic.

sion of the Federal law, he noted that "the unrecorded prior sale is invalid as to the [b]ank . . . which took *without actual notice* of the transaction" (emphasis supplied). We regard these statements, and the absence of any discussion of the circumstances asserted as showing notice, as indications that he did not understand any issue of "actual notice" to have been presented to him. If no such issue was raised before the trial judge, it cannot be advanced for the first time on appeal. See *John B. Deary, Inc.* v. *Crane,* 4 Mass. App. Ct. 719, 724 (1976); *Drury* v. *Abdallah,* 9 Mass. App. Ct. 865, 866-867 (1980). See also *Milton* v. *Civil Serv. Commn.,* 365 Mass. 368, 379 (1974); *York* v. *Sullivan,* 369 Mass. 157, 161 (1975); *Community Natl. Bank* v. *Dawes,* 369 Mass. 550, 553-557 (1976); *O'Donnell* v. *Bane,* 385 Mass. 114, 116-117, 120-121 (1982); *Enterprise Music & Games, Inc.* v. *McCarthy,* 9 Mass. App. Ct. 906 (1980).

*Judgment affirmed.*