Maurice SHACKET and Sylvia
Shacket, Plaintiffs,

v.

PHILKO AVIATION, INC., Defendant.

No. 78 C 4284.

United States District Court,
N.D. Illinois, E.D.

June 26, 1984.

James C. Murray, Jr., Katten, Muchin, Zavis, Pearl & Galler, Chicago, Ill., for plaintiffs.

Leslie R. Bishop, Donald B. Garvey, Michael E. Kerpan, Jr., Bishop & Crawford, Ltd., Oak Brook, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Maurice and Sylvia Shacket ("Shackets") originally sued Roger Smith ("Smith"), Roger Smith Aircraft Sales, Inc. ("Smith Aircraft"), Philko Aviation, Inc. ("Philko"), its president Edward J. McArdle ("McArdle") and Sandwich State Bank ("Bank") for declaratory relief (Count I) and fraud (Count II). This Court's September 22, 1980 memorandum opinion and order (497 F.Supp. 1262) granted Shacket's motion for summary judgment on Count I and the Philko-McArdle motion for summary judgment on Count II. On Philko's appeal as to Count I, our Court of Appeals affirmed this Court's decision (681 F.2d 506), only to be reversed by the Supreme Court (462 U.S. 406, 103 S.Ct. 2476, 76 L.Ed.2d 678). Shackets did not appeal from the Count II judgment in favor of Philko and McArdle. Now the case is before this Court on remand from 727 F.2d 1113.

### Facts [1]

On April 19, 1978 Smith Aircraft sold a new Piper Navajo airplane to Shackets, who paid the price in full and took possession. Smith gave Shackets photocopies of the bills of sale reflecting the plane's chain of title and told them he would take care of the paperwork. Shackets understood that to mean Smith would record the original bills of sale with the Federal Aviation Administration ("FAA").

For some time before the Smith-Shacket transaction McArdle had been pressing Smith for repayment of a December 1977 Philko loan to Smith Aircraft ($60,000 of the original $80,000 was still unpaid). Just one day before making the deal with Shackets, Smith came to McArdle and said he had contracted to buy an airplane (actually the same one involved in the Shacket transaction) from Clark Aviation ("Clark") for resale to Krueger Aviation ("Krueger"). Smith represented Bank had refused to lend him $152,000 needed to complete the purchase, because that loan would put Smith over his credit limit.

After both McArdle and Bank had examined the original bills of sale evidencing the airplane's chain of title, McArdle decided Philko would borrow the necessary funds from Bank and in turn lend the money to Smith Aircraft to finance the purchase, with Philko taking title as security. McArdle and Smith agreed all proceeds of the airplane's sale to Krueger would be credited to Smith Aircraft (they would be applied first to pay off Philko's note to Bank and then to pay Smith Aircraft's pre-existing note to Philko, with any remaining funds to go to Smith Aircraft).

Smith told Andrews, Bank's representative, he was acting as a broker for Clark in the transaction and the check must be made out to Clark. On April 22 Philko executed a note for $152,000 to Bank, which in turn issued its cashier's check for that amount to Clark.

On April 24 Smith gave Bank the final bill of sale from Smith Aircraft as seller to Philko as buyer, and Bank gave Smith the check made out to Clark. After some lapse of time Bank sent all the original bills of sale (representing an unbroken paper chain of title) to the FAA. That gave Philko FAA-registered title to the airplane. Smith did not go through with the Krueger transaction (if indeed there ever was one).

### Case History and Present Posture

In awarding Shackets summary judgment on Count I, this Court decided (497 F.Supp. at 1264–71):

---

1. This recitation of facts is drawn from this Court's opinion, 497 F.Supp. at 1264–66 and the parties' current submissions.

1. Federal Aviation Act of 1958 (the "Act"), 49 U.S.C. §§ 1301–1542,[2] did not preempt state law in determining the validity of the transfer between Smith Aircraft and Shackets and in resolving priorities among conflicting interests.

2. Under the Illinois Uniform Commercial Code, Ill.Rev.Stat. ch. 26, §§ 1–101 et seq., Shackets as bona fide purchasers had priority over Philko's later-recorded security interest.

In its reversal of the Court of Appeals' affirmance of this Court's decision, the Supreme Court held:

1. Under Section 1403(c)[3] every transfer of title to an airplane must be evidenced by an instrument, and every such instrument must be recorded before it can affect the rights of innocent third parties who had recorded their titles with the FAA. To the extent of any conflict with that federal law, state law is preempted. 103 S.Ct. at 2478–79.

2. State law determines priorities between two recorded interests, but each interest must be recorded before it can get whatever priority state law gives it. *Id.* at 2480.

3. As between the parties the sale to Shackets was valid and binding. If Philko either (a) had actual notice of Shackets' interest or (b) failed to acquire or perfect its interest under state law for reasons wholly unrelated to the sale to Shackets, Shackets are entitled to retain possession of the airplane. *Id.* at 2481.

4. Despite those principles, the Act does not require a party to do the impossible. If Shackets failed to record their interest through no fault of their own, their interest might still be valid under the Act. *Id.* at 2481.

After the Supreme Court's remand of the case to the Court of Appeals, that Court's mandate instructed this Court to consider at least the following issues:

(1) Whether the district court had so considered and dismissed count II (involving notice) as to justify a holding of waiver or res judicata because there was no cross appeal.

(2) Whether Philko's conveyance instruments were valid under Illinois law.

(3) Whether the Shackets exercised diligence to record their conveyance.

This Court then directed the parties to address, at the outset, the first of those questions. Its relevance is plain: Under Section 1403(c), if Philko had "actual notice" of the Shackets' unrecorded interest, the fact of Shackets' non-recording would not defeat Shackets' claim vis-a-vis Philko.

On that score, this Court had said in originally granting summary judgment to Philko and McArdle on Count II, 497 F.Supp. at 1271 & n. 13:

Shacket alleges in Complaint Count II that Smith and McArdle were business partners; that Smith had some interest in Philko; that Philko and McArdle were aware that the Shackets owned the plane when Smith Aircraft executed the bill of sale to Philko; that Philko aided and abetted Smith and Smith Aircraft in attempting to defraud the Shackets; and that Philko and McArdle joined Smith and Smith Aircraft in the illegal and fraudulent conversion of the Shackets' property. Except for the issue of conversion, which is a matter of law and follows from the matters already discussed in this opinion, there is no evidence in support of the allegations in Count II.[13] Certainly there is no showing of fraud or a knowing interference

---

**2.** All citations to the Act will take the form "Section——" (with the section number referring to Title 49 rather than to the Act's internal numbering).

**3.** Section 1403(c) provides in relevant part (emphasis added):

(c) *No conveyance* or instrument the recording of which is provided for by subsection (a) of this section *shall be valid* in respect of such

aircraft, aircraft engine or engines, propellers, appliances, or spare parts *against any person other than* the person by whom the conveyance or other instrument is made or given, his heir or devisee, or *any person having actual notice thereof, until such conveyance* or other instrument *is filed for recordation* in the office of the Secretary of Transportation....

with the Shackets' rights by Philko or McArdle.

Defendants' memorandum in support of the McArdle-Philko cross-motion for summary judgment regarding Count II was not responded to by Shackets. Accordingly the Court finds there is no genuine issue of any material fact regarding the subject matter of Count II.

13 At the Shacket-Smith Aircraft closing, Rittenhouse told Shacket that Smith had a partner named Philko. Sometime after both "sales," McArdle told Shacket there was money owed on the plane. Neither of those facts creates an issue of fact supporting the allegations of Count II.

Shackets failed to appeal that decision. That renders the Count II judgment for Philko and McArdle final, with full res judicata and collateral estoppel effects. See *Bloomer Shippers Association v. Illinois Central Gulf Railroad Co.*, 655 F.2d 772, 777 (7th Cir.1981).[4]

Now Philko has moved (purportedly under Fed.R.Civ.P. ("Rule") 56) for a determination of the res judicata or collateral estoppel effect of this Court's initial judgment in favor of Philko and McArdle on Count II. Despite the procedural infirmity of that request,[5] this Court will accept the invitation to decide whether that judgment collaterally estops Shackets from now arguing Philko had "actual notice" of Shackets' interest within the meaning of Section 1403(c).

4. *Bloomer* is not direct precedent for the present situation, in which the question is the effect to be given a failure by a *prevailing* party in the trial court to cross-appeal the unfavorable trial court ruling on an alternative theory of recovery. Nonetheless, because Shackets have not challenged the full applicability of res judicata and collateral estoppel principles in these circumstances (and has submitted no authority indicating otherwise), this opinion will assume those principles are fully operative.

5. Rule 56 speaks of a motion for summary judgment "upon all or any part" of "a claim [or] counterclaim...." That does not by its terms apply to an *issue*-narrowing decision such as that now requested—a concept that does not fit comfortably within any of the Rules, though Rule 16 might come as close as any. Nonetheless this Court will review the issues posed by Philko's motion, if only to advance the litiga-

## Collateral Estoppel

█ Three questions must be answered "yes" to apply collateral estoppel to an issue in a later proceeding, *Teamsters Local 282 Pension Trust Fund v. Angelos*, 585 F.Supp. 1401, 1402 (N.D.Ill.1984); see *Whitley v. Seibel*, 676 F.2d 245, 248, 250 (7th Cir.), *cert. denied*, 459 U.S. 942, 103 S.Ct. 254, 74 L.Ed.2d 198 (1982):

1. Is the relevant issue in the second suit the same as an issue in the first?

2. Was that issue actually and necessarily litigated and determined in the first suit?

3. Did the party against whom estoppel is asserted have a "full and fair opportunity" to litigate the issue?

Each of those questions will be dealt with in turn.

## 1. *Identity of Issues*

As interpreted by the few courts that have dealt with the issue head-on, "actual notice" under Section 1403(c) means (*Marsden v. Southern Flight Service, Inc.*, 227 F.Supp. 411, 416 (M.D.N.C.1961)):

knowledge of inquiry-provoking facts as well as express knowledge of the fact in issue.

See *South Shore Bank v. H & H Aircraft Sales, Inc.*, 16 Mass.App. 472, 452 N.E.2d 276, 280 (1983).[6]

tion. *Wetherill v. University of Chicago*, 548 F.Supp. 66, 67 n. 3 (N.D.Ill.1982).

6. That non-literal construction accords with the generally accepted definition of "actual notice." *Black's Law Dictionary* 957 (5th ed. 1979); *McCausland v. Davis*, 204 So.2d 334, 335 (Fla. Dist.Ct.App.1967). It finds its criminal law counterpart in the instruction as to the meaning of "knowledge" often approved by our Court of Appeals, most recently in *United States v. Petullo*, 709 F.2d 1178, 1181 (7th Cir.1983) (emphasis in original):

When the word "knowingly" is used in these instructions, it means that the defendant realized what he was doing and was aware of the nature of his conduct, and did not act through ignorance, mistake or accident: knowledge may be proven by defendant's conduct, and by all the facts and circumstances surrounding the case. *No person can intentionally*

In Count II Shackets charged Philko and McArdle with:

(1) aiding and abetting Smith and Smith Aircraft in defrauding Shackets, and

(2) fraudulent conversion of the airplane.

What do the Illinois authorities teach about each of those theories? Illinois case law recognizes no separate tort of aiding and abetting fraud. *Cenco, Inc. v. Seidman & Seidman,* 686 F.2d 449, 452–53 (7th Cir.), *cert. denied,* 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982). But a person who knowingly participates in a fraud or who knowingly accepts the fruits of fraudulent conduct is also guilty of that fraud. *Id.; Callner v. Greenberg,* 376 Ill. 212, 218, 33 N.E.2d 437, 440 (1941); *Beaver v. Union National Bank and Trust Co.,* 92 Ill. App.3d 503, 506, 47 Ill.Dec. 223, 225, 414 N.E.2d 1339, 1341 (3d Dist.1980); *Moore v. Pinkert,* 28 Ill.App.2d 320, 333, 171 N.E.2d 73, 78 (1st Dist.1960).

As for the "conversion" branch of Shackets' attack, under Illinois law intent need not be shown to prove simple conversion of goods. *Douglass v. Wones,* 120 Ill.App.3d 36, 41, 76 Ill.Dec. 114, 119, 458 N.E.2d 514, 519 (2d Dist.1983); *Landfield Finance Co. v. Feinerman,* 3 Ill.App.3d 487, 490, 279 N.E.2d 30, 33 (1st Dist.1972); *Associates Discount Corp. v. Walker,* 39 Ill.App.2d 148, 153, 188 N.E.2d 54, 56 (2d Dist.1963). Conversion involves merely a defendant's exercise of control over the goods in a manner inconsistent with the plaintiff's right of possession. *Jenson v. Chicago & Western Indiana Railroad Co.,* 94 Ill.App.3d 915, 932, 50 Ill.Dec. 470, 484, 419 N.E.2d 578, 593 (1st Dist.1981). But Shackets did not allege "simple" conversion. Instead they charged *fraudulent* conversion, which by definition requires the same showing of intent to defraud—and necessarily the same knowledge that the defrauded party had an interest in the property—as a claim of pure fraud.

Thus Philko's and McArdle's *actual* knowledge of Shackets' interest was an element Shackets had to prove in order to recover on Count II. But such actual knowledge is merely a sufficient, and *not* a necessary, element of "actual notice" under Section 1403(c)—all actual knowledge is "actual notice," but not all "actual notice" involves actual knowledge. If this Court were to hold Shackets collaterally estopped by its prior resolution of Count II, that holding would foreclose relitigation of Philko's claimed actual *knowledge,* but not of its claimed "actual notice" based on less than outright knowledge.

### 2. *"Actually and Necessarily Litigated and Determined"*

Shackets also attack the second element of collateral estoppel analysis. They say that even if this Court did decide Philko had no actual knowledge of Shackets' interest in the airplane, that determination was not necessary to the decision in favor of Philko on Count II. According to their analysis:

1. As to "aiding and abetting" fraud, this Court could have ruled for Philko and McArdle by finding:

(a) Smith and Smith Aircraft did not defraud Shackets *or*

(b) Philko and McArdle did not know of the fraud.

2. As to the fraudulent conversion, this Court could have ruled for Philko and McArdle if:

(a) no conversion had taken place *or*

(b) Philko and McArdle did not know of the conversion.

As for the first ground of Shackets' Count II claim, this Court made no specific finding as to Smith's and Smith Aircraft's fraud (although the whole recital of their conduct is instinct with fraud). It did however specifically find Philko and McArdle did not engage in fraud. As for the second ground, this Court found conversion *had* taken place but there had been no "know-

---

*avoid knowledge by closing his eyes to facts*        *which should prompt him to investigate.*

ing interference" with Shackets' rights by Philko and McArdle.

At least then as to the second (fraudulent conversion) claim, and on any fair reading of the first (aiding and abetting fraud) as well, the Philko-McArdle lack of knowledge was the linchpin in granting judgment in their favor on Count II. It follows that the absence of Philko's and McArdle's actual knowledge of Shackets' interest in the aircraft was necessarily determined in granting judgment for them on Count II.

### 3. *Full and Fair Opportunity to Litigate*

As to the third and last component of the collateral estoppel analysis, Shackets argue they did not have a full and fair opportunity to litigate the issue of "actual notice" because it was not briefed the first time around. But that is not the relevant question. For the reasons already discussed, collateral estoppel can extend only to the issue of Philko's and McArdle's actual knowledge (not "actual notice" in the statutory sense). As to *that* issue, they plainly had the requisite "full and fair opportunity." When Philko and McArdle moved for summary judgment on Count II, their lack of knowledge of Shackets' interest in the airplane was clearly placed in issue (see the McArdle-Philko memorandum in support of their summary judgment motion on Count II). Shackets chose not to respond. They must bear the burden of that choice. *Keene Corp. v. International Fidelity Insurance Co.,* 736 F.2d 388 (7th Cir.1984), adopting this Court's opinion denying Fidelity's motion for reconsideration, 561 F.Supp. at 665–66.

\* \* \*

In sum, all three prerequisites to application of collateral estoppel have been satisfied—but only as to the question of actual knowledge, not statutory "actual notice." Shackets are collaterally estopped from now contending Philko had actual knowledge of Shackets' interest in the airplane.

### *Philko's Summary Judgment Motion*

But that is not the end of the inquiry. Philko has moved for summary judgment on the non-collaterally-estopped facet of "actual notice": Did Philko have knowledge of inquiry-provoking facts that, if investigated, would have put it on notice of Shackets' interest?

▮ Shackets assert the existence of several facts they say were "inquiry-provoking" in that sense:

1. Smith Aircraft did not have possession of the airplane.

2. Philko, through McArdle, knew of Smith Aircraft's precarious financial position.

3. Smith had the original bills of sale. That included one from Clark to Smith Aircraft, allegedly inconsistent with Smith's statement he still needed money to complete the purchase from Clark.

4. Andrews, a Bank representative, knew Smith had sold airplanes out of trust in 1974–75 in a transaction where he had not financed with Cessna Financing. That knowledge is assertedly chargeable to Philko because Andrews was acting as Philko's agent in this transaction.

Each of those matters bears a brief separate look:

1. Several cases have held non-possession by the seller is not itself enough to provoke inquiry. *Marsden,* 227 F.Supp. at 416–17; *South Shore Bank,* 16 Mass.App. 472, 452 N.E.2d at 280; *Smith v. Eastern Airmotive Corp.,* 99 N.J.Super. 340, 240 A.2d 17, 20 (Ch.Div. 1968). See *Lochhead v. G.A.C. Finance Corp. of Camelback,* 6 Ariz.App. 539, 434 P.2d 655, 658 (1967).

2. Although McArdle did know of Smith Aircraft's financial situation in general, that too is not of itself sufficient to provoke inquiry into whether someone else has an interest in a particular asset. See *Michelin Tires (Canada) Ltd. v. First National Bank of Boston,* 666 F.2d 673, 681–83 (1st Cir.1981).

3. Smith's possession of the original bills of sale is not necessarily suspicious in the face of Smith's representation he was acting as Clark's agent in the transaction. After all, Smith also said (consistently with that representation) the check for the balance of the purchase price had to be made out to Clark.

4. Finally Shackets have adduced no evidence Andrews was acting as an agent for Philko beyond his having given the check to Smith and having later sent the bills of sale to the FAA. McArdle himself examined the bills of sale, talked to Bank and decided to enter into the transaction. Any knowledge Andrews may have had about Smith's prior financial dealings cannot be imputed to Philko, for there is no showing of a scope of agency vested in Andrews that would trigger such attribution. *Peoria & Eastern Railway Co. v. Kenworthy,* 7 Ill. App.3d 350, 353–54, 287 N.E.2d 543, 546 (4th Dist.1972). Moreover, information even a recognized agent has relating to events before the start of the agency relationship is not automatically imputed to the principal. *Greer v. Carter Oil Co.,* 373 Ill. 168, 172, 25 N.E.2d 805, 807–08 (1940). There is nothing to create even a reasonable inference Philko either knew or might be deemed to know about Smith's transactions several years earlier (and even were it otherwise, it would require a real conceptual stretch of *that* knowledge to impose a duty on Philko to inquire into whether someone else had an interest in the current airplane).[7]

But all this overview demonstrates is that the trier of fact could reasonably find (or even most likely find) for Philko on the inquiry-provoking aspect of "actual notice." What Philko has asked for is summary judgment on that issue, and the test there is a wholly different one: *Must* the trier of fact, with all reasonable inferences drawn in Shackets' favor, find for Philko? *Korf v. Ball State University,* 726 F.2d 1222, 1226 (7th Cir.1984). On that score the

fourth "fact" advanced by Shackets may be ignored entirely for the reasons already discussed, but it cannot be said the other three—in tandem—could not reasonably lead a factfinder to the different conclusion that Philko should have inquired further.

### Conclusion

Shackets are collaterally estopped from contending Philko had actual knowledge of Shackets' interest in the aircraft. This Court cannot however find, as a matter of *law,* Philko had no "actual notice" of that interest within the meaning of Section 1403(c). That issue, together with the remaining two questions identified by our Court of Appeals (and any others the parties properly identify as open on remand), remain for resolution.

---

7. Bank did not find out until *after* the April 1978 transaction that Smith had also improperly sold three airplanes financed by Bank. 497

F.Supp. at 1263 n. 1. A fortiori that knowledge could not be imputed to Philko when the current transaction took place.