Maurice SHACKET and Sylvia Shacket, Plaintiffs–Counterdefendants–Appellees,

v.

PHILKO AVIATION, INC., Defendant–Counterplaintiff–Appellant.

No. 86–3030.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 6, 1988.

Decided March 2, 1988.

Donald B. Garvey, Bishop & Crawford, Ltd., Oak Brook, Ill., for defendant-counterplaintiff-appellant.

James C. Murray, Jr., James E. Hanlon, Jr., Katten, Muchin & Zavis, Chicago, Ill., for plaintiffs-counterdefendants-appellees.

Before POSNER, COFFEY, and EASTERBROOK, Circuit Judges.

POSNER, Circuit Judge.

This case, now in its tenth year, involves a dispute over title to an airplane. The plaintiffs are Mr. and Mrs. Shacket; the defendant is Philko Aviation, Inc.; and the basis of federal jurisdiction is diversity of citizenship. Through a complex series of transactions unnecessary to describe, Philko, which is owned by an experienced and successful businessman named Edward McArdle, became the lessor of facilities used by an aircraft dealer named Roger Smith. In November 1977 Smith agreed to sell the Shackets a Piper airplane for $290,-000 (we round off all dollar figures to the nearest $1,000), payable by a trade-in of the Shackets' old plane plus $126,000 in cash. The Shackets put down a deposit of $20,-000. As Smith was not a Piper dealer, he arranged to buy the plane from Clark Aviation, Inc., which was, for $239,000. On April 20, Clark delivered the plane together with a bill of sale to Smith, who in turn delivered it to the Shackets in exchange for the balance of the purchase price, the trade-in having already been delivered to Smith. Smith told the Shackets that, as was customary, he, as dealer, would take care of registering their title with the FAA pursuant to 49 U.S.C. § 1403.

And now the melodrama: the next day, April 21, Smith went to McArdle and told him that he had contracted to sell a 1978 Piper Navajo—in fact, the very plane he had just delivered to the Shackets (of course he did not tell McArdle this)—to a firm called Krueger Aviation for $290,000, and that he needed $152,000 to complete payment to Clark Aviation, from which he had bought the plane. Smith showed McArdle a phony purchase order from Krueger, plus either the original or a copy of the bill of sale to him from Clark. McArdle agreed to have Philko advance the money. In exchange, Smith not only agreed to repay the money to Philko out of the proceeds of the sale, and in addition to use those proceeds to repay $60,000 that he owed one of McArdle's other companies; he also gave Philko a bill of sale for the aircraft. It was understood, however, that Philko would not take possession. The plane would be sold to Krueger, and Smith

would pocket the difference between the purchase price and the $212,000 ($152,000 + $60,000) destined for the McArdle companies. Smith, who still owed Clark $147,-000 of the purchase price of the plane, now paid this off.

Late in May, Smith 'fessed up to McArdle. Philko promptly (May 26) filed with the FAA the bill of sale that it had received from Smith as part of the supposed Krueger deal; on June 13 the FAA recorded Philko as owner of the plane, Smith never having filed the Shackets' title papers with the FAA. Although Mr. Shacket had called Smith repeatedly about the matter, Smith had fobbed him off with stories about the FAA's backlog. Shacket smelled a rat when early in June he tried to call Smith again and found that Smith's phone had been disconnected. Although Shacket immediately mailed the FAA the temporary registration form that Smith had given him when he bought the plane, it was too late; by the time the form arrived, the FAA's records showed Philko as the owner. The FAA told Shacket that he would have to have a bill of sale from Philko before it would record his title—which of course Philko would not give him.

The Shackets then brought this suit, asking for a declaratory judgment that they, not Philko, owned the plane. Philko counterclaimed, seeking damages for conversion. (The Shackets were in possession of the plane, as they still are.) The case presented a classic dispute between two persons each with defective title to the same piece of property—the Shackets' title being defective because not recorded, Philko's being defective because acquired from one (Smith) who had no title, though, as we are about to see, in the world of commercial law one who has no title may be able to convey good title to another. The district court held that, as between the rival claimants, the Shackets should prevail. 497 F.Supp. 1262 (N.D.Ill.1980). This court affirmed. 681 F.2d 506 (7th Cir.1982). Taking a narrow view of the registration system created by the Federal Aviation Act, we held that the validity of the Shackets' title depended on state law and that under Illinois law the Shackets had good title

notwithstanding their failure to record it. We further held that even if their title might be vulnerable in a contest with a bona fide purchaser (which Philko could be even though Smith lacked title when he gave it the bill of sale—the whole purpose of the bona fide purchaser doctrine is to enable a person to obtain good title from one who lacks good title), Philko was not a bona fide purchaser because it had never taken possession of the plane.

The Supreme Court, disagreeing with our view that "if an unrecorded transfer of an aircraft is valid under state law, it has validity as against innocent third parties," reversed, but remanded for further proceedings because "if Philko had actual notice of the transfer to the Shackets or if, under state law, Philko failed to acquire or perfect the interest that it purports to assert for reasons wholly unrelated to the sale to the Shackets, Philko would not have an enforceable interest, and the Shackets would [be entitled to] retain possession of the aircraft." 462 U.S. 406, 414, 103 S.Ct. 2476, 2481, 76 L.Ed.2d 678 (1983) (footnote omitted). The further proceedings took the form of a bench trial, at the conclusion of which the district court reinstated the declaratory judgment for the Shackets. 651 F.Supp. 675 (N.D.Ill.1986).

The main issue in that trial was whether Philko had "actual notice" of the sale to the Shackets when it obtained its own bill of sale. Although under the Federal Aviation Act as interpreted by the Supreme Court an unrecorded conveyance of an airplane, such as the sale by Smith to the Shackets, normally is trumped by a recorded interest, there is an exception for the case where the holder of that interest had "actual notice" of the prior unrecorded conveyance. See 49 U.S.C. § 1403(c). Obviously Philko had such notice at the time it mailed its bill of sale to the FAA, but the district court held that the relevant date for notice is the date on which Philko gave value for its interest, rather than the date of recording. See 651 F.Supp. at 691. The statute does not say this, and there are no cases on the question apart from the district judge's opinion, but his conclusion

agrees with the usual result in priority contests, see *Atlantic Transp. Co. v. Alexander Shipping Co.*, 261 Mass. 1, 8, 157 N.E. 725, 727 (1927); *Life Savings & Loan Ass'n v. Bryant*, 125 Ill.App.3d 1012, 1019, 81 Ill.Dec. 577, 582–83, 467 N.E.2d 277, 282–83 (1984), and is sensible as an original matter. The purpose of forfeiting the unrecorded conveyance is to protect the innocent third party who parts with value in reliance on the absence of recorded evidence of a previous conveyance. He needs that protection from the moment he parts with value; his own delay if any in recording his interest is relevant only if the delay misleads another innocent third party just as he was misled by his predecessor's failure to record.

The issue of notice must be distinguished from that of possession, which figured in our previous decision. While holding that the federal recording system is preemptive, the Supreme Court disclaimed the ridiculous proposition that whoever files a bill of sale first is the true owner unless he has actual notice of a prior sale. The filer must have a property interest, whether an ownership or a security interest, to be entitled to file. 49 U.S.C. § 1403(a); see also *id.*, § 1401(f) (registration with the FAA is not evidence of ownership when ownership is in issue). The interest is created by state law. See 49 U.S.C. § 1406; *Aircraft Trading & Services, Inc. v. Braniff, Inc.*, 819 F.2d 1227, 1231 (2d Cir.1987). This might seem to imply that if, as we originally held, Philko had no ownership interest under state law because under that law (see U.C.C. § 2–403(1), Ill.Rev.Stat. ch. 26, ¶ 2–403(1)) a bona fide purchaser must have possession of the good in question, which Philko did not, Philko had no right to file, and actual notice is irrelevant.

■ There are three problems with this suggestion. First, despite what we said in our previous opinion, section 2–403 does not appear to make possession a prerequisite to being a bona fide purchaser. Lack of possession can be evidence that there was no purchase, and in some circumstances (as we shall note shortly) can be evidence that the purchaser was not acting in

good faith; but that is different from an ironclad rule that a purchaser to be bona fide (or perhaps to be a purchaser) must have possession. See *Lochhead v. G.A.C. Finance Corp.*, 6 Ariz.App. 539, 542, 434 P.2d 655, 658 (1968). Any such requirement would be inconsistent with the unquestioned principle that a creditor can be a bona fide purchaser. See U.C.C. § 1–201(32); *In re Samuels & Co.*, 526 F.2d 1238, 1242 (5th Cir.1976); 1 Anderson on the Uniform Commercial Code § 1–201:169 (3d ed. 1981).

Second, a rule of state law that disqualified the nonpossessory filer might encroach intolerably on the federal scheme, in which event it would of course be preempted. The Supreme Court alluded to this issue in a footnote, see 462 U.S. at 414 n. 8, 103 S.Ct. at 2481 n. 8, without resolving it; if, however, the Court had been in confident agreement with our finding that Philko had no valid interest in the plane under state law, presumably it would have affirmed our decision on that alternative ground, rather than reverse. A recording system presupposes a distinction between title and possession. But if, as our previous opinion may have implied, only possessors have title, then it is possession, not (recorded) title, that determines rights, and once again the federal registration scheme is out the window. Some such concern, at any rate, may lie behind footnote 8. The concern may be exaggerated. Systems for recording title to chattels are designed primarily for the benefit of creditors rather than purchasers, see Baird, *Notice Filing and the Problem of Ostensible Ownership*, 12 J. Legal Stud. 53, 54–59 (1983); Baird & Jackson, *Possession and Ownership: An Examination of the Scope of Article 9*, 35 Stan.L.Rev. 175, 180–83 (1983); and of course a bona fide creditor with a valid security interest need not, and ordinarily will not, be in possession of the collateral. And, realistically, Philko *was* a creditor rather than a buyer.

Finally, to make possession a condition of valid title could be thought to undermine the federal statute's requirement of "actual notice" by making lack of possession in effect a suspicious circumstance importing

"constructive" notice (i.e., no notice, treated as notice). See *Marsden v. Southern Flight Service, Inc.,* 227 F.Supp. 411, 416–17 (M.D.N.Car.1961); *South Shore Bank v. H & H Aircraft Sales, Inc.,* 16 Mass.App. 472, 478, 452 N.E.2d 276, 280 (1983). But if possession is merely a requirement under state law of valid title, it is a little hard to see the force of this particular objection.

The question of the significance of Philko's lack of possession need not be answered in order to decide this appeal. We mention it only to make clear that we regard it as an open question. Judge Shadur's finding that Philko had actual notice is not clearly erroneous, and therefore defeats Philko's claim.

"Actual notice" could as a matter of semantics be read to mean that to lose under section 1403(c) Philko must actually have known of the prior conveyance to the Shackets. But it need not be read that narrowly. "Notice" and "knowledge" are not synonyms; when one says of a person that he was "on notice" of a fact, one may mean just that he should have known, not that he did know. The Federal Aviation Act probably got the term from the Federal Ship Mortgage Act, 46 U.S.C. § 921(a) (see *Marsden v. Southern Flight Service, Inc., supra,* at 416, and cases cited there), where it had been interpreted to mean " 'either actual knowledge, or actual notice of such facts and circumstances as by the exercise of due diligence would have led it to knowledge of complainant's rights,' " *The Tompkins,* 13 F.2d 552, 554 (2d Cir. 1926). Compare 26 U.S.C. § 6323(i)(1), which defines "actual notice" to an organization in terms of (lack of) "due diligence." See *United States v. Metro Construction Co.,* 439 F.Supp. 308, 310 (C.D. Calif.1977), rev'd on other grounds, 602 F.2d 879 (9th Cir.1979). *Marsden* holds that "actual notice" has the same meaning in section 1403(c) as it does in the Federal Ship Mortgage Act; see also *McCausland v. Davis,* 204 So.2d 334, 336 (Fla.App.1967); *South Shore Bank v. H & H Aircraft Sales, Inc., supra,* 16 Mass.App. at 478, 452 N.E.2d at 280. The dearth of reported cases suggests that the resolution by *The Tompkins* has been accepted by the relevant commercial community; neither party questions it in this case.

So "actual notice" under section 1403(c) includes not only knowledge that one's seller lacks good title but also knowledge of facts that would lead a reasonable person to inquire further into the seller's title. (This is sometimes called "implied actual notice," a disagreeable oxymoron.) Inquiry either of Clark Aviation or of Krueger Aviation would immediately have disclosed Smith's fraud, so the only question is whether McArdle knew (really knew) facts that would have led a reasonable person to inquire.

Partly by reason of Smith's failure to repay the $60,000 that it owed to another of McArdle's companies, partly because the terms of the lease entitled it to (and it did) inspect Smith's books, Philko knew that Smith was in financial trouble; and people in financial trouble have to be watched. In these circumstances, Smith's possession of a bill of sale for an airplane on which he said he owed $152,000 (more than half the purchase price from Clark Aviation) was suspicious. How had he persuaded Clark to part with title when so much of the purchase price was unpaid? The obvious (in fact true, if for "Krueger" one reads "Shackets") explanation was that he had a buyer for the plane; he was just a middleman. And this is what he represented himself to McArdle to be: a middleman between Clark and Krueger. But if he had a firm enough buyer to persuade Clark to give him title to the plane, why did he need $152,000—and need it so desperately that he was willing to give McArdle title to a plane worth (to Krueger, so Smith represented) almost twice as much? Cf. *Graves Motors, Inc. v. Docar Sales, Inc.,* 414 F.Supp. 717 (E.D.La.1976). A related peculiarity is that Smith seemed at one and the same time to need the loan in order to get the title, and to have the title, since he gave McArdle a bill of sale.

Judge Shadur thought that, knowing these things, McArdle, an experienced businessman, should as a reasonable person have made at least minimal inquiries to

determine the bona fides of the transaction. A call to either Clark or Krueger would have revealed the fraud. When the burden of inquiry is slight, facts only slightly suspicious are enough to trigger it.

Admittedly, the line between "constructive notice," which is not within the scope of 49 U.S.C. § 1403(c), and "implied actual notice," which is, is a fine one. But "constructive notice" often means no notice, while "implied actual notice" requires (1) actual knowledge of (2) highly suspicious circumstances, coupled with (3) an unaccountable failure to react to them. This in turn is a shade short of the form of actual knowledge that consists of closing your eyes because you're afraid of what you would see if you opened them. See *United States v. Ramsey,* 785 F.2d 184, 189 (7th Cir.1986); *Duckworth v. Franzen,* 780 F.2d 645, 652–53 (7th Cir.1985); *United States v. Josefik,* 753 F.2d 585, 589 (7th Cir.1985) ("something verging on knowledge, combined with a desire to escape the consequences of knowledge"). Like so much in law, it is all a question of degree. Philko points out that if McArdle had suspected Smith's fraud he would not have closed the deal with him; true enough, but this would be decisive only if the statute required that McArdle have known that Smith had sold the plane already and was seeking to sell the same plane a second time. Knowledge of fishy circumstances that would move a reasonable person to inquire further is enough.

Judge Shadur laid great stress on the fact that McArdle was a successful and experienced businessman. The idea is that facts that would not make an ordinary person suspicious should have made him suspicious. We do not need to decide whether, as the judge assumed, "implied actual notice" depends on the characteristics of the actual or of the average claimant, since Philko does not argue that it was wrong for the judge to consider McArdle's above-average business experience. We point out, however, that his experience might well have cut the other way by suggesting that however the situation might appear to a judge the circumstances as they presented themselves to McArdle were not suspicious. Business transactions are often conducted more informally than lawyers might think prudent; McArdle's past successes suggest that he may have been acting prudently in this instance as well, however things turned out. But our only task is to determine whether the district judge's findings were clearly erroneous, not whether we agree with them.

If as we must assume in light of those findings Philko had actual notice of the sale to the Shackets and therefore can gain no benefit from having recorded its interest with the FAA, it is irrelevant whether they acted with reasonable diligence in attempting to record their title, as Judge Shadur found they did. But we do not want to be understood as necessarily agreeing with his finding. Although the Supreme Court left the door open a crack for the previous purchaser who tries but fails to file, see 462 U.S. at 414, 103 S.Ct. at 2481, the circumstances must be extraordinary before the nonfiler can be allowed to squeeze through. For, by definition, in a case where the nonfiler's reasonable diligence is relevant the filer was a bona fide purchaser who could not possibly have determined that there was a previous unrecorded transaction which might someday rise up and destroy his title.

If the statute required a comparison of the level of care employed by the persons struggling for priority, then the Shackets' diligence or lack thereof would become highly relevant in light of the fact that McArdle was an "innocent" party (at least in the special sense of lacking actual *knowledge* of the prior conveyance) when he parted with value in exchange for the bill of sale to the airplane. But that is not the structure of the statute. If Philko had actual notice of the prior conveyance to the Shackets, Philko must lose.

AFFIRMED.